## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**, 1156 15th Street NW, Suite 1250 Washington DC, 20005<br><br>and<br><br>**THE ASSOCIATED PRESS**, 450 West 33rd Street New York, NY 10001<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>**FEDERAL BUREAU OF INVESTIGATION**, 935 Pennsylvania Avenue, NW Washington, D.C. 20535<br><br>and<br><br>**UNITED STATES DEPARTMENT OF JUSTICE** 950 Pennsylvania Avenue, NW Washington, D.C. 20530<br><br>　　　　Defendants. | Civil Action No. _____ |

## <u>COMPLAINT</u>

The Reporters Committee for Freedom of the Press ("Reporters Committee" or "RCFP") and The Associated Press ("AP") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby allege as follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, for declaratory, injunctive, and other appropriate relief brought by the AP, one of the oldest

and most trusted news organizations in the world, and the Reporters Committee, a nonprofit

association dedicated to safeguarding the First Amendment's guarantee of a free and unfettered

press. 11:00

2.      By this action, Plaintiffs seek to compel the Department of Justice ("DOJ") and

the Federal Bureau of Investigation ("FBI") (collectively, "Defendants") to comply with their

obligations under FOIA to release requested records concerning the FBI's practice of

impersonating members of the news media, including the AP, in order to deliver surveillance

software to targets of criminal investigations.  Plaintiffs are statutorily entitled to disclosure of

these records, which they seek so that they may inform the public about the nature and extent of

the FBI's impersonation of journalists and news organizations.  Defendants have improperly

withheld the records requested by Plaintiffs in violation of the law and in opposition to the

public's strong interest in obtaining information regarding a law enforcement practice that

undermines both the credibility and independence of the news media.

## PARTIES

3.      The Reporters Committee is an unincorporated nonprofit association located at

1156 15th St. NW, Suite 1250, Washington, DC 20005.

4.      The Associated Press is a not-for-profit news cooperative.  Its members and

subscribers include the nation's newspapers, magazines, broadcasters, cable news services and

Internet content providers.  Its world headquarters are located at 450 West 33rd Street, New

York, NY 10001.

5.      Defendant United States Department of Justice ("DOJ") is an agency of the

federal government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f) and 5 U.S.C. § 702

that has possession, custody, and/or control of the records that Plaintiffs seek.  The DOJ's

headquarters are located at 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

6.      Defendant Federal Bureau of Investigation ("FBI") an agency of the federal

government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f) and 5 U.S.C. § 702, and a

component of Defendant DOJ, that has possession, custody, and/or control of the records that

Plaintiffs seek.  Its headquarters are located at 935 Pennsylvania Avenue, NW, Washington,

D.C. 20535.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action and personal

jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

### Background

9.      In October of 2014 it came to light, through documents released by the FBI in

response to a FOIA request made by the Electronic Frontier Foundation ("EFF"), that in 2007

the FBI had masqueraded as a member of the news media—specifically, as the AP—in order to

deliver surveillance software to a criminal suspect's computer.  *See Endpoint Surveillance Tools*

*(CIPAV)*, https://www.eff.org/document/fbicipav-08pdf (last accessed Aug. 25, 2015).

10.     The documents obtained by EFF showed that, as part of an investigation into a

series of bomb threats at Timberline High School in Lacey, Washington in June of 2007, the FBI

had obtained a warrant to deliver a specific type of surveillance software known as a "Computer

and Internet Protocol Address Verifier" ("CIPAV") to a social media account associated with the

threats.  Once delivered, the CIPAV would send "the activating computer's IP address and/or

MAC address, other environment variables, and certain registry-type information to a computer controlled by the FBI," thus enabling the FBI to identify the computer's location and its user.  *Id.* at p. 33.

11.     On or about October 28, 2014, the FBI confirmed that, in order to successfully deliver a CIPAV to the bomb threat suspect's computer, FBI agents had sent an electronic communication with a link to a fake news article headlined, "Bomb threat at high school downplayed by local police department," and "Technology savvy student holds Timberline High School hostage"; the FBI attributed its fabricated story to "The Associated Press."  *See id.* at p. 62; *see also* Gene Johnson, *FBI says it faked AP story to catch bomb suspect*, The Associated Press (Oct. 28, 2014), http://perma.cc/ZH7W-XBFS.  When the FBI's bomb threat suspect clicked on the link, he unknowingly downloaded the CIPAV.

12.     In addition to confirming that FBI agents had fabricated and distributed a phony AP story in order to dupe a suspect into downloading surveillance software, on or about October 28, 2014, FBI officials reportedly told members of the media that the agency was examining existing policies concerning agency impersonation of journalists and news organizations.  Ellen Nakashima & Paul Farhi, *FBI lured suspect with fake Web page, but may have leveraged media credibility*, The Wash. Post (Oct. 28, 2014), https://perma.cc/A5NX-UXE2.

13.     Shortly thereafter, on or about October 30, 2014, AP's General Counsel Karen Kaiser hand delivered to the DOJ a letter addressed to Attorney General Eric Holder, expressing concern over the FBI's actions, and asking for additional information regarding how often, and under what circumstances, the FBI poses as a member of the press.   *See* Gene Johnson, *AP asks for accounting of fake FBI news stories*, The Associated Press (Oct. 30, 2014),

http://perma.cc/FPY7-U8F3; Letter from Karen Kaiser to Attorney General Holder (Oct. 30,

2014), https://perma.cc/W46W-2DLW.

14.     Ms. Kaiser's letter protested "in the strongest possible terms the FBI's fabrication

and publication of a fake Associated Press news story in connection with its June 2007

investigation," stating:  "The FBI both misappropriated the trusted name of The Associated Press

and created a situation where our credibility could have been undermined on a large scale . . . .  It

is improper and inconsistent with a free press for government personnel to masquerade as The

Associated Press or any other news organization.  The FBI may have intended this false story as

a trap for only one person.  However, the individual could easily have reposted this story to

social networks, distributing to thousands of people, under our name, what was essentially a

piece of government disinformation."  *Id.*

15.     On or about November 6, 2014, the Reporters Committee, writing on behalf of

itself and 25 other media organizations, also sent a letter to Attorney General Holder and FBI

Director James Comey voicing concerns about the FBI's actions, including its apparent failure to

follow internal guidelines regarding impersonation of members of the news media, and

requesting additional information about the FBI's policies and practices.  *See* Letter from the

Reporters Committee to Attorney General Holder and FBI Director Comey (Nov. 6, 2014),

http://perma.cc/NEB5-F6LK ("The utilization of news media as a cover for delivery of electronic

surveillance software is unacceptable.  This practice endangers the media's credibility and

creates the appearance that it is not independent of the government . . . .").

16.     On the same day, The New York Times published a letter to the editor from Mr.

Comey that defended the FBI's impersonation of an AP reporter.  Mr. Comey confirmed in his

letter that the FBI had done more than merely create a fake news story attributed to the AP, but

that an undercover FBI officer had also "portrayed himself as an employee of The Associated Press, and asked if the suspect would be willing to review a draft article about the threats and attacks, to be sure that the anonymous suspect was portrayed fairly." *See* James Comey, Letter to the Editor, *To Catch a Crook: The F.B.I.'s Use of Deception*, N.Y. Times (Nov. 6, 2014), http://perma.cc/GZ4C-N6B5.

17.     Mr. Comey stated that undercover operations involving deception had "long been a critical tool in fighting crime," and that the FBI's use of such techniques "is subject to close oversight, both internally and by the courts that review our work." *Id.* Mr. Comey stated his belief that the FBI's impersonation of an AP reporter "was proper and appropriate under Justice Department and FBI guidelines at the time. Today, the use of such an unusual technique would probably require higher-level approvals than in 2007, but it would still be lawful and, in a rare case, appropriate." *Id.*

18.     Kathleen Carroll, executive editor of the AP, responded in a statement on November 7, 2014: "This latest revelation of how the FBI misappropriated the trusted name of The Associated Press doubles our concern and outrage, expressed earlier to Attorney General Eric Holder, about how the agency's unacceptable tactics undermine AP and the vital distinction between the government and the press." Statement of Kathleen Carroll, *AP 'Outraged' by FBI Impersonation*, The Associated Press (Nov. 7, 2014), http://perma.cc/UX2U-H6CH.

19.     In a letter of November 10, 2014 to Attorney General Eric Holder and FBI Director James Comey, AP President and Chief Executive Officer Gary Pruitt demanded assurances from the Justice Department that the FBI would never again impersonate a member of the news media. "In stealing our identity, the FBI tarnishes [the AP's] reputation, belittles the value of the free press rights enshrined in our Constitution and endangers AP journalists and

other newsgatherers around the world.  This deception corrodes the most fundamental tenet of a

free press — our independence from government control and corollary responsibility to hold

government accountable."  *See* Letter from Gary Pruitt to Attorney General Holder and FBI

Director Comey (Nov. 10, 2014), https://perma.cc/WXH3-8JFW.

20.     Notwithstanding the FBI's admission in October of 2014 that it had posed as the

AP in order to electronically deliver a CIPAV to a criminal suspect, as well as the subsequent

demands from the AP, Reporters Committee, and others that the FBI make a public accounting

of its practices, the FBI has since withheld information from the press and the public about its

practice of impersonating members of the news media in order to deliver surveillance software to

targets of investigations.  Specifically, as alleged below, the FBI has withheld—and continues to

withhold—records concerning that practice that were requested by Plaintiffs more than nine

months ago.

### Plaintiffs' FOIA Requests

### The AP Request

21.     On November 6, 2014, AP reporter Raphael Satter, on behalf of the AP, sent a

FOIA request via email to both the FBI's central FOIA office and the FBI's Seattle Division

seeking:

(1) "Any documents referring to the decision to create the fake AP news article in the

Timberline High School case.  In particular, I seek correspondence between the FBI's

Seattle office and FBI headquarters about the case.  I also seek a copy of the internal

review carried out by the FBI and a copy of the Web link sent by the FBI to suspect

in 2007";

(2) "An accounting of the number of times, between Jan. 1, 2000 and Nov. 6, 2014, that

the Federal Bureau of Investigation has impersonated media organizations or

generated media-style material (including but not limited to emails, webpages or

links) to deliver malicious software to suspects or anyone else caught up in an

investigation"; and

(3) "Any documents—including training material, reviews and policy briefings—dealing

with the creation and deployment of bogus news stories or media-style material in an

investigative context."

A true and correct copy of that request (the "AP Request") is attached hereto as Exhibit A, and

incorporated by reference herein.

22.     The AP Request included a request for a fee benefit as a representative of the

news media under 5 U.S.C. § 552(a)(4)(A), as well as a request for a fee waiver.

23.     The AP Request also included a request for expedited processing.  The AP

Request states, *inter alia*, that the requested records are related to "a currently unfolding news

story, specifically, the FBI's use of media organizations as cover to hack into suspects'

computers and the appropriation of media groups' branding to help camouflage covert action.

Some have argued those actions place reporters at risk of harm and chip away at the credibility

of legitimate newsgathering organizations."

24.     Mr. Satter certified that the statements in the AP Request concerning the need for

expedited processing were true and correct to the best of his knowledge and belief.

25.     The AP Request complied with all applicable DOJ regulations regarding the

submission of FOIA requests.

<u>The RCFP Requests</u>

26.     On October 31, 2014, Adam A. Marshall and Hannah Bloch-Wehba, on behalf of

the Reporters Committee, submitted two separate FOIA requests to the FBI's central FOIA

office via facsimile and email (collectively, the "RCFP Requests").

27.     RCFP's first FOIA request sought "all records concerning the FBI's utilization of

links to what are or appear to be news media articles or news media websites to install data

extraction software, remote access search and surveillance tools, or the 'Computer and Internet

Protocol Address Verifier' (CIPAV)."  A true and correct copy of that request ("RCFP FOIA

Request 1") is attached hereto as Exhibit B, and incorporated by reference herein.

28.     RCFP's second FOIA request sought "all records concerning the FBI's guidelines

and policies concerning undercover operations or activities in which a person may act as a

member of the news media, including, but not limited to, the guidelines and policies relating to

the criminal and national security undercover operations review committees and the Sensitive

Operations Review Committee; guidelines and policies concerning the use of investigative

methods targeting or affecting the news media, including, but not limited to, sensitive Title III

applications; and all guidelines and policies concerning sensitive investigative matters involving

the activities of the news media or relating to the status, involvement, or impact of an

investigation upon the news media."  A true and correct copy of that request ("RCFP FOIA

Request 2") is attached hereto as Exhibit C, and incorporated by reference herein.

29.     The RCFP Requests included a request for a fee benefit as a representative of the

news media under 5 U.S.C. § 552(a)(4)(A), as well as a request for a fee waiver.  The RCFP

Requests state, *inter alia*, that information responsive to the requests was being sought for

"dissemination to the general public through multiple avenues," including RCFP's website,

email newsletters, and its quarterly magazine.  In addition, in support of the Reporters

Committee's request for a fee waiver, the RCFP Requests point to "widespread public debate

and interest in the FBI's creation of a fake news story to plant software on a suspect's

computer."

30.     The RCFP Requests also included a request for expediting processing, noting,

*inter alia*, that pending proposed changes to Rule 41 of the Federal Rules of Criminal Procedure

concerning the issuance of warrants in connection with federal law enforcement investigations

had created an urgent need on the part of the press and the public for the information sought by

the RCFP Requests.

31.     Mr. Marshall and Ms. Bloch-Wehba certified that the statements in the RCFP

Requests concerning the need for expedited processing were true and correct to the best of their

knowledge and belief.

32.     The RCFP Requests complied with all applicable DOJ regulations regarding

submitting FOIA requests.

### Defendant's Treatment of Plaintiffs' FOIA Requests

#### The AP Request

33.     In a letter from David M. Hardy dated December 1, 2014, the FBI acknowledged

receipt of the AP Request.  The acknowledgment stated that a search was being conducted for

responsive records, and that the AP's request for a fee waiver was being considered.

34.     In a letter from Mr. Hardy dated December 8, 2014, the FBI stated that it had

granted expedited processing for the AP Request pursuant to 28 C.F.R. § 16.5(d)(1)(iv).

35.     In a letter from Mr. Hardy dated December 10, 2014, the FBI stated that, even

though the request had yet to be fulfilled, the AP Request was unilaterally "being closed

administratively," because the "material responsive to your request will be processed in FOIA

1313504-0 as they share the same information."

36.     The combining of Mr. Satter's request with Request No. 1313504-0 occurred

despite the fact that Mr. Satter had not filed Request No. 1313504-0 and was given no

information about the identity of the requester underlying FOIA Request No. 1313504-0.

37.     In a letter from Mr. Hardy dated December 17, 2014, the FBI stated that it had

granted a fee waiver for the AP Request pursuant to 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. §

16.11(k).

38.     Having received no further information or communication from the FBI

concerning the AP Request, on February 9, 2015, Mr. Satter wrote to David Sobonya, the FBI's

Public Information Officer, via email to request information concerning the status of the AP

Request.  Specifically, Mr. Satter's email sought clarification as to what was meant by the

statement in Mr. Hardy's letter dated December 10, 2014 that the AP Request was being "closed

administratively," as well as a time estimate for the completion of the request.  Mr. Satter also

sought information about the identity of the individual or entity that filed Request No. 1313504-

0.

39.     Mr. Sobonya responded to Mr. Satter on or about February 9, 2015, stating that

that the estimated completion time for large requests is 649 days.

40.     Mr. Soobonya also stated that he could not identify the party underlying FOIA

Request No. 1313504-0.

41.     Having received no further information or communication from the FBI

concerning the AP Request, on June 3, 2015, the AP submitted an administrative appeal to the

Office of Information Policy ("OIP") at DOJ (the "AP Appeal").

42.     By letter dated July 7, 2015, OIP acknowledged receipt of the AP Appeal.

43.     By letter dated August 21, 2015, OIP refused to consider the administrative appeal of the AP request, stating that "[a]s no adverse determination has yet been made by the FBI on Request No. 1313504, there is no further action for this Office to consider on appeal."

44.     As of the filing of this Complaint, no further information or communication from Defendants concerning the AP Appeal or the AP Request has been received by AP.

45.     As of the filing of this Complaint, it has been 294 days since the AP Request was submitted, and 85 days since the AP Appeal was submitted.

<u>The RCFP Requests</u>

46.     On November 3, 2014, Mr. Sobonya, the FBI's Public Information Officer, confirmed the FBI's receipt of the RCFP Requests via email.

47.     On December 22, 2014, Mr. Sobonya wrote to the Reporters Committee requesting copies of the RCFP Requests.  That same day, Ms. Bloch-Wehba, on behalf of the Reporters Committee, sent Mr. Sobonya copies of the RCFP Requests via email.

48.     In a letter from Mr. Hardy dated January 8, 2015, the FBI denied the Reporters Committee's request for expedited processing as to RCFP Request 2, seeking "all records concerning the FBI's guidelines and policies concerning undercover operations or activities in which a person may act as a member of the news media . . . ."

49.     In a letter from Mr. Hardy dated May 18, 2015, the FBI stated that it had "conducted a search of the Central Records System" in connection with RCFP Request 1, seeking "all records concerning the FBI's utilization of links to what are or appear to be news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the 'Computer and Internet Protocol Address Verifier' (CIPAV)," and that the FBI was "unable to identify main file records responsive to the FOIA."

50.     Having received no further information or communication from the FBI concerning either of the RCFP Requests, on June 2, 2015, RCFP submitted, via U.S. Mail, administrative appeals for both RCFP Requests to OIP (collectively, the "RCFP Appeals").

51.     With respect to RCFP Request 1, the Reporters Committee's asserted in its appeal that the FBI had failed to conduct an adequate search for responsive records.  Pointing to, among other things, the fact that the FBI had already released records responsive to that request in response to an earlier FOIA request made by EFF, the Reporters Committee stated that there could be no question that the FBI had responsive records.

52.     With respect RCFP Request 2, the Reporters Committee's asserted in its appeal that the FBI had failed to make a determination with respect to the request within the statutory time limits proscribed by FOIA.

53.     OIP acknowledged receipt of the RCFP Appeals by letters dated July 9, 2015. Said letters state that the RCFP Appeals were received by OIP on June 11, 2015.

54.     In response to the administrative appeal of RFCP Request 1, OIP upheld the sufficiency of the FBI's search by letter dated August 5, 2015.  The letter states, *inter alia*, that OIP determined that the FBI "conducted an adequate, reasonable search for [responsive] records."  The letter also states that while the FBI's initial determination with respect to RCFP Request 1 stated that the CRS was searched, that was a "typographical error.  The FBI conducted a search of its Operational Technology Division for responsive records."

55.     By letter dated August 4, 2015, OIP refused to consider the administrative appeal of RCFP Request 2, stating that "[a]s no adverse determination has yet been made by the FBI, there is no action for this Office to consider on appeal."

56.     As of the filing of this Complaint, no further information or communication from Defendants concerning the RCFP Appeals or the RCFP Requests has been received by the Reporters Committee.

57.     As of the filing of this Complaint, it has been 300 days since the RCFP Requests were submitted, and 86 days since the RCFP Appeals were submitted.

## CAUSES OF ACTION

### Count I

**Violation of FOIA for Failure to Comply with Statutory Deadlines**

58.     Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing as though fully set forth herein.

59.     Defendants are agencies subject to FOIA. 5 U.S.C. § 556(f); 5 U.S.C. § 551.

60.     The AP Request and the RCFP Requests properly seek records within the possession, custody, and/or control of Defendants under FOIA.

61.     Defendants have failed to process the AP Request as soon as practicable. 5 U.S.C. § 552(a)(6)(E)(iii).

62.     Defendants failed to make a determination with respect to the AP Request within the 20 working-day deadline mandated by FOIA. 5 U.S.C. § 556(a)(6)(A).

63.     Defendants failed to make a determination with respect to the RCFP Requests within the 20 working-day deadline mandated by FOIA. 5 U.S.C. § 556(a)(6)(A).

64.     Plaintiffs have or are deemed to have exhausted applicable administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

## Count II

### Violation of FOIA for Wrongful Withholding of Agency Records

65.     Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing as though fully set forth herein.

66.     Defendants are agencies subject to FOIA.  5 U.S.C. § 556(f); 5 U.S.C. § 551.

67.     The AP Request and the RCFP Requests properly seek records within the possession, custody, and/or control of Defendants under FOIA.

68.     Defendants failed to make responsive records available to Plaintiffs, in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

69.     Plaintiffs have or are deemed to have exhausted applicable administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

## Count III

### Violation of FOIA for Failure to Conduct a Reasonable Search

70.     Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing as though fully set forth herein.

71.     Defendants are agencies subject to FOIA.  5 U.S.C. § 556(f); 5 U.S.C. § 551.

72.     The AP Request and the RCFP Requests properly seek records within the possession, custody, and/or control of Defendants under FOIA

73.     Defendants have failed to conduct a search reasonably calculated to identify all records responsive to the AP Request and the RCFP Requests in violation of its obligations under FOIA.  5 U.S.C. § 552(a)(3).

74.     Plaintiffs have or are deemed to have exhausted applicable administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

**Count IV**

**Violation of FOIA for Failure to Grant News Media Fee Status and Fee Waivers**

75.     Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing as though fully set forth herein.

76.     Defendants are agencies subject to FOIA.  5 U.S.C. § 556(f); 5 U.S.C. § 551.

77.     The RCFP Requests set forth facts supporting a determination that the Reporters Committee is entitled to news media fee status.

78.     The RCFP Requests set forth facts supporting a determination that the Reporters Committee is entitled to a fee waiver.

79.     Defendants failed to make a determination with respect to Plaintiff Reporters Committee's news media fee status in violation of FOIA.  5 U.S.C. § 552(a)(4).

80.     Defendants failed to make a determination with respect to Plaintiff Reporter Committee's requests for a fee waiver, in violation of FOIA.  5 U.S.C. § 552(a)(4).

81.     Plaintiff Reporters Committee has or is deemed to have exhausted applicable administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

(1) order Defendants to conduct a search reasonably calculated to identify all records responsive to the AP Request and the RCFP Requests, and to immediately disclose, in their entirety, all records responsive to those requests that are not specifically exempt from disclosure under FOIA;

(2) issue a declaration that Plaintiffs are entitled to disclosure of the requested records;

(3) issue a declaration that Plaintiffs are entitled to news media fee status;

(4) issue a declaration that the Reporters Committee is entitled to a fee waiver in connection with the RCFP Requests;

(5) issue a declaration that Defendants and/or their personnel have acted arbitrarily and/or capriciously with respect to withholding records responsive to the AP Request and/or the RCFP Requests pursuant to 5 U.S.C. § 552(a)(4)(F)(i);

(6) award Plaintiffs reasonable attorney fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7) grant such other relief as the Court may deem just and proper.

Dated: August 27, 2015

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org

*Counsel for Plaintiffs*

*Of Counsel for The Associated Press*:
Karen Kaiser
Brian Barrett
THE ASSOCIATED PRESS
450 West 33rd Street
New York, NY 10001
Telephone: 212.621.7547
Facsimile: 212.506.6131
E-mail: kkaiser@ap.org
E-mail: bbarrett@ap.org

*Of Counsel for The Reporters Committee
for Freedom of the Press*:
Adam A. Marshall
Hannah Bloch-Wehba
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300

Facsimile: 202.795.9310
Email: amarshall@rcfp.org
Email: hblochwehba@rcfp.org