## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**, <br><br> and <br><br> **THE ASSOCIATED PRESS**, <br><br>       Plaintiffs, <br><br>    v. <br><br> **FEDERAL BUREAU OF INVESTIGATION,** <br><br> and <br><br> **UNITED STATES DEPARTMENT OF JUSTICE** <br><br>       Defendants. | Civil Action No. 15-cv-1392 (RJL) |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The United States Department of Justice and Federal Bureau of Investigation (collectively, "Defendants") respectfully move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.  The reasons for this Motion are set forth in the Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment, the Statement of Material Facts as to Which There Is No Genuine Issue, and the Declaration of David M. Hardy (as well as the exhibits thereto).  A proposed order is filed concurrently herewith.

DATED this 28th day of March, 2016.    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

_/s/ Andrew M. Bernie_
ANDREW M. BERNIE (DC BAR# 995376)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 616-8488
Fax:  (202) 616-8470
E-mail:  andrew.m.bernie@usdoj.gov

_Counsel for Defendants_

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS**,

and

**THE ASSOCIATED PRESS**,

       Plaintiffs,

    v.

**FEDERAL BUREAU OF
INVESTIGATION,**

and

**UNITED STATES DEPARTMENT
OF JUSTICE**

      Defendants.

Civil Action No. 15-cv-1392 (RJL)

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h)(1), Defendants Federal Bureau of Investigation ("FBI") and

the United States Department of Justice ("DOJ") (collectively, "Defendants") respectfully submit

the following statement of material facts as to which there is no genuine issue:

1.      In a letter dated November 6, 2014, the Associated Press ("AP") submitted a

FOIA request to the FBI (the "AP Request").  This request sought:

    a.    "Any documents referring to the decision to create the fake AP news article in the Timberline High School case.  In particular, I seek correspondence between the FBI's Seattle office and FBI headquarters about the case.  I also seek a copy of the internal review carried out by the FBI and a copy of the Web link sent by the FBI to suspect in 2007";

      b.   "An accounting of the number of times, between Jan. 1, 2000 and Nov. 6 2014, that the Federal Bureau of Investigation has impersonated media organizations or generated media-style material (including but not limited to emails, webpages or links) to deliver malicious software to suspects or anyone else caught up in an investigation"; and

      c.   "Any documents—including training material, reviews and policy briefings—dealing with the creation and deployment of bogus news stories or media-style material in an investigative context."

Declaration of David M. Hardy ("Hardy Decl." or "Hardy Declaration") ¶¶ 5-6 & Ex. A.

2.      The AP requested expedited processing and a fee waiver for the AP Request. Hardy Declaration ¶ 6 & Ex. A.

3.      By letter dated December 1, 2014, the FBI acknowledged receipt of the AP Request. Hardy Decl. ¶ 7 & Ex. B.

4.      The FBI assigned the first part of the AP Request (quoted in paragraph 1(a) above) FOIPA Number 1313500-000, and assigned the second and third parts of the AP Request (quoted in paragraph 1(b)-(c) above) FOIPA Number 1313504-000. Hardy Decl. ¶ 7 & Ex. B.

5.      By letter dated December 8, 2014, the FBI granted expedited processing as to both FOIPA Number 1313500-000 and FOIPA Number 1313504-000. Hardy Decl. ¶ 8 & Ex. C.

6.      By letter dated December 11, 2014, the FBI granted the AP's request for a fee waiver for FOIPA Number 1313504-000. Hardy Decl. ¶ 10 & Ex. E.

7.      On October 31, 2014, Reporters Committee for Freedom of the Press ("RCFP") submitted a FOIA request to the FBI (the "First RCFP Request"), seeking "all records concerning the FBI's guidelines and policies concerning undercover operations or activities in which a person may act as a member of the news media, including, but not limited to, the guidelines and policies relating to the criminal and national security undercover operations review committees and the Sensitive Operations Review Committee; guidelines and policies

concerning the use of investigative methods targeting or affecting the news media, including, but not limited to, sensitive Title III applications; and all guidelines and policies concerning sensitive investigative matters involving the activities of the news media or relating to the status, involvement, or impact of an investigation upon the news media."  Hardy Decl. ¶ 16 & Ex. K.

8.     RCFP requested expedited processing and a fee waiver for the First RCFP Request.  Hardy Decl. ¶ 16 & Ex. K.

9.     Also on October 31, 2014, RCFP submitted a second FOIA request to the FBI (the "Second RCFP Request") (collectively with the First RCFP Request, the "RCFP Requests"). The Second RCFP Request sought "all records concerning the FBI's utilization of links to what are, or appear to be, news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the 'Computer and Internet Protocol Address Verifier' (CIPAV)."  Hardy Decl. ¶ 17 & Ex. L.

10.    RCFP requested expedited processing and a fee waiver for the Second RCFP Request.  Hardy Decl. ¶ 17 & Ex. L.

11.    By separate emails dated November 3, 2014, the FBI acknowledged receipt of the RCFP Requests.  Hardy Decl. ¶ 18 & Ex. M.

12.    The FBI assigned FOIPA Number 1319113-000 to the First RCFP Request and assigned FOIPA Number 1319138-000 to the Second RCFP Request.  Hardy Decl. ¶ 21 & Ex. O.

13.    By separate letters dated January 8, 2015, the FBI denied expedited processing of both the RCFP Requests.  Hardy Decl. ¶ 22 & Ex. P.

14.     On February 26, 2016, the FBI completed its processing of Plaintiffs' FOIA requests and made its release of responsive records to Plaintiffs' counsel.  Hardy Decl. ¶ 32 & Ex. Y.

15.     By letter dated March 28, 2016, the FBI provided Plaintiffs' counsel with a supplemental release including or representing 26 pages previously withheld in part or withheld in full, wherein the FBI either cited additional applicable exemptions to withhold information already marked as withheld pursuant to another applicable exemption, or released additional information.  Hardy Decl. ¶ 33 & Ex. Z.

16.     The FBI processed a total of 267 pages of records responsive to Plaintiffs' FOIA requests.  Of the processed pages, 83 pages were released in full, 103 pages were released in part, 59 pages were withheld in full pursuant to applicable FOIA exemptions and 22 pages were withheld in full as duplicates.  Hardy Decl. ¶¶ 4, 32.

17.     The FBI is not charging RCFP or the AP any fees for its processing of the FOIA requests at issue in this case.  Hardy Decl. ¶ 10.

18.     In the pages withheld in full or withheld in part, the FBI withheld certain information pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  Hardy Decl. ¶ 32.

19.     In searching for documents responsive to RCFP's request for "records concerning the FBI's utilization of links to what are or appear to be news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the 'Computer and Internet Protocol Address Verifier' (CIPAV)," the FBI determined that its Operational Technology Division ("OTD") was the component likely to possess records responsive to that request.  Hardy Decl. ¶¶ 37-40.

20.     The FBI's Record/Information Dissemination Section ("RIDS") accordingly sent an Electronic Communication ("EC") to OTD, requesting that it conduct a search of database systems, as well as paper and manual files, for records responsive to these requests, and the EC further recommended that OTD send an email to each of its employees asking them to search for all relevant records pertaining to this request.  Hardy Decl. ¶¶ 38-39.  OTD completed the search requested in the EC and informed RIDS that it had located no records responsive to this request. *Id.* ¶ 39.

21.     With respect to the remainder of Plaintiffs' FOIA requests, the FBI searched for documents in the following offices: the FBI's Seattle Division, the Office of General Counsel, the agency's Discovery Processing Units, OTD, the Behavioral Analysis Unit within the Critical Incident Response Group, the National Covert Operations Division within the Criminal Investigative Division, and the Training Division.  Hardy Decl. ¶¶ 43-44

22.     RIDS requested that each component conduct a search of its electronic databases as well as its paper and manual files for the relevant requests, and RIDS also recommended that each recipient component send an e-mail to each of its employees asking them to search for all records responsive to these requests.  Hardy Decl. ¶ 43.  Each component responded and, as a result of these efforts, the FBI was able to locate records responsive to Plaintiffs' requests.  *Id.* ¶¶ 44-45.

23.     After this matter reached litigation, the FBI supplemented its prior efforts by conducting an index search of its Central Records System ("CRS"), searching the CRS's electronic index using the terms "Timberline," "Timberline High School" and "Timberline Highschool."  Hardy Decl. ¶ 57.  This search did not yield any records that had not already been provided by the Seattle Field office in response to the earlier EC sent to that office.  *Id.*

24.     The FBI also conducted a search of the agency's Electronic Surveillance ("ELSUR") indices, which includes the FBI's records related to electronic surveillance sought, administered, and/or conducted by the FBI since January 1, 1960. Hardy Decl. ¶ 58.  The FBI searched the ELSUR indices using the same three search terms, and no records were identified as a result of that search.  *Id.*

25.     As a result of its searches of the CRS and ELSUR indices, the FBI found no indication that materials responsive to Plaintiffs' FOIA requests would be found anywhere else. Nor did the results of either search suggest that other responsive records would likely exist. Hardy Decl. ¶ 59.

26.     David M. Hardy is the Section Chief of the RIDS Records Management Division. Hardy Decl. ¶ 1.  Mr. Hardy has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1.  *Id.* ¶ 2.

27.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 1.  Hardy Decl. ¶¶ 63-64.  The Hardy Declaration justifies and describes the basis for the withholding of these materials, setting forth the applicable Executive Order and the basis for the classification.  *Id.* ¶¶ 64-72

28.     The FBI withheld certain information responsive to Plaintiffs' requests comprising intelligence sources and methods under Exemption 3 pursuant to Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1).  Hardy Decl. ¶ 74. The Hardy Declaration justifies these withholdings.  *Id.* ¶¶ 74-76.

29.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 3 pursuant to the Pen Register Act, 18 U.S.C. § 3123(d).  Hardy Decl. ¶ 77.  The

withheld material contains information that, if disclosed, would reveal either the existence or use of a pen register or trap and trace device, or reveal the existence of an investigation involving a pen register or trap and trace device.  *Id.*   The Hardy Declaration justifies these withholdings. *Id.*

30.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 5 pursuant to the deliberative process privilege.  Hardy Decl. ¶¶ 79-82.  The Hardy Declaration justifies and sets forth the basis for these withholdings, including how these materials are predecisional and deliberative.  *Id.*

31.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 5 pursuant to the attorney-client privilege.  Hardy Decl. ¶¶ 83-84.  The withheld material involves confidential communications between and among FBI counsel and their FBI client employees, consisting of legal advice provided with respect to an ongoing investigation and related prosecution.  *Id.*  The Hardy Declaration justifies these withholdings.  *Id.*

32.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 7(C) and Exemption 7(E).  Hardy Decl. ¶¶ 87-103.  The Hardy Declaration, in justifying these withholdings, establishes that the materials withheld under Exemption 7(C) and Exemption 7(E) were compiled for law enforcement purposes.  *Id.* ¶ 85.

33.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 6 and Exemption 7(C) to redact the names and/or identifying information of FBI Special Agents and support personnel.  Hardy Decl. ¶ 87.  The Hardy Declaration justifies and sets forth the basis for these withholdings, explaining why these individuals have substantial privacy interests in not having their identities disclosed, and why there is no public interest in the

disclosure of this information because disclosure would not significantly increase the public's understanding of the operations and activities of the FBI.  *Id.* ¶¶ 87-88.

34.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 6 and Exemption 7(C) to redact the names and/or identifying information of non-FBI Federal Government personnel.  Hardy Decl. ¶ 89.  The Hardy Declaration justifies and sets forth the basis for these withholdings, explaining why these individuals have substantial privacy interests in not having their identities disclosed and why there would be no public interest in disclosure of the information because disclosure would not significantly increase the public's understanding of the operations and activities of the federal government.  *Id.*

35.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 6 and Exemption 7(C) to redact the names and/or identifying information of third parties of investigative interest to the FBI and other law enforcement agencies.  Hardy Decl. ¶ 90.  The Hardy Declaration justifies and sets forth the basis for these withholdings, explaining why these individuals maintain substantial privacy interests in not having their identities disclosed, and further explaining that these privacy interests outweigh any public interest in disclosure because disclosing personal information about these individuals would not significantly increase the public's understanding of government activities.  *Id.*

36.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 6 and Exemption 7(C) to redact the names and/or identifying information of third parties merely mentioned in the responsive documents.  Hardy Decl. ¶ 91.  The Hardy Declaration justifies and sets forth the basis for these withholdings, explaining why these individuals have substantial privacy interests in non-disclosure, and further explaining that

disclosure of this information would not shed any light on the operations and activities of the FBI. *Id.*

37.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 6 and Exemption 7(C) to redact the names and/or identifying information of local law enforcement personnel.  Hardy Decl. ¶ 92.  The Hardy Declaration justifies and sets forth the basis for these withholdings, explaining why these individuals have substantial privacy interests in not having their identities disclosed, and why there is no public interest in disclosure of this information. *Id.*

38.     The FBI withheld certain information responsive to Plaintiffs' requests under Exemption 6 and Exemption 7(C) to redact the names and/or identifying information of third party victims of a crime.  Hardy Decl. ¶ 93.  The Hardy Declaration justifies and sets forth the basis for these withholdings, explaining why these individuals have substantial privacy interests in not having their identities disclosed, and why there is no public interest in the disclosure of this information. *Id.*

39.     The FBI withheld certain information responsive to Plaintiffs' requests pursuant to Exemption 7(E) to protect from disclosure operational directives that inform and instruct FBI employees on how to properly use certain sensitive, non-public techniques, procedures, and guidance for conducting investigations (and, in providing this instruction, identifies the sensitive, non-public procedures, techniques, and strategies at issue).  Hardy Decl. ¶ 96.  The Hardy Declaration justifies these withholdings, explaining why disclosure of these materials could reasonably be expected to risk circumvention of the law. *Id.*

40.     The FBI withheld certain information responsive to Plaintiffs' requests pursuant to Exemption 7(E) to protect from disclosure information about an undercover operation

conducted by the FBI.  Hardy Decl. ¶ 97.  The Hardy Declaration justifies these withholdings, explaining why disclosure of these materials could reasonably be expected to risk circumvention of the law.  *Id.*

41.     The FBI withheld certain information responsive to Plaintiffs' requests pursuant to Exemption 7(E) to protect from disclosure internal secure fax numbers and phone numbers. Hardy Decl. ¶ 98.  The Hardy Declaration justifies these withholdings, explaining why disclosure of these materials could reasonably be expected to risk circumvention of the law, as well as allow individuals to disrupt official FBI business and subject FBI employees to harassing phone calls and facsimiles.  *Id.*

42.     The FBI withheld certain information responsive to Plaintiffs' requests pursuant to Exemption 7(E) to protect from disclosure non-public details concerning its deployment of the Computer and Internet Protocol Address Verifier, in addition to other techniques and procedures used by the FBI in criminal and national security investigations.  Hardy Decl. ¶ 99.  The Hardy Declaration justifies these withholdings, explaining why disclosure of these materials could reasonably be expected to risk circumvention of the law.  *Id.* ¶¶ 99-100.

43.     The FBI withheld certain information responsive to Plaintiffs' requests pursuant to Exemption 7(E) to protect from disclosure non-public details about targets of FBI pen registers and trap and trace devices.  Hardy Decl. ¶ 101.  In addition to explaining why these materials are exempt from disclosure under Exemption 3, the Hardy Declaration justifies withholding of these materials under Exemption 7(E), explaining why disclosure of these materials could reasonably be expected to risk circumvention of the law.  *Id.* ¶¶ 77, 101.

44.     The FBI withheld certain information responsive to Plaintiffs' requests pursuant to Exemption 7(E) to protect from disclosure the techniques and procedures it uses to analyze

information in connection with criminal and national security investigations.  Hardy Decl. ¶ 102.

The Hardy Declaration justifies these withholdings, explaining why disclosure of these materials

could reasonably be expected to risk circumvention of the law.  *Id.* ¶¶ 102-103.

45.     In processing Plaintiffs' requests, the FBI individually examined each responsive

page to identify non-exempt information that could be reasonably segregated from exempt

information for release.  Hardy Decl. ¶ 104.

46.     The FBI released all reasonably segregable information to Plaintiffs.  Hardy Decl.

¶¶ 104-106.

DATED this 28th day of March, 2016.   Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

 */s/ Andrew M. Bernie*
ANDREW M. BERNIE (DC BAR# 995376)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 616-8488
Fax:  (202) 616-8470
E-mail:  andrew.m.bernie@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**, <br><br> and <br><br> **THE ASSOCIATED PRESS**, <br><br>  Plaintiffs, <br><br>  v. <br><br> **FEDERAL BUREAU OF INVESTIGATION,** <br><br> and <br><br> **UNITED STATES DEPARTMENT OF JUSTICE** <br><br>  Defendants. | Civil Action No. 15-cv-1392 (RJL) |

<u>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 1

ARGUMENT ..................................................................................................... 4

I.      Legal Standard ...................................................................................... 4

II.     The FBI Conducted an Adequate Search for Responsive Records ....................... 5

III.    The FBI Has Properly Withheld Information Under Applicable
        Exemptions ........................................................................................... 9

        A.      The FBI Properly Withheld Information Pursuant to Exemption 1 .......... 10

        B.      The FBI Properly Withheld Information Pursuant to Exemption 3 .......... 13

                1.      (b)(3)-1: Records Withheld Pursuant to the National
                        Security Act of 1947, 50 U.S.C. § 3024(i)(1) ............................. 13

                2.      (b)(3)-2: Records Withheld Pursuant to the Pen Register
                        Act, 18 U.S.C. § 3123(d) ............................................. 15

        C.      The FBI Properly Withheld Information Pursuant to Exemption 5 .......... 15

                1.      (b)(5)-1: Records Withheld Pursuant to the Deliberative
                        Process Privilege ........................................................... 16

                2.      (b)(5)-2: Records Withheld Pursuant to the Attorney-
                        Client Privilege ............................................................. 17

        D.      The FBI Properly Withheld Information Pursuant to Exemptions 6
                & 7(C) .................................................................................. 18

                1.      (b)(6)-1 and (b)(7)(C)-1: Names and/or Identifying
                        Information of FBI Special Agents and Support Personnel .......... 20

                2.      (b)(6)-2 and (b)(7)(C)-2: Names and/or Identifying
                        Information of Non-FBI Federal Government Personnel ............. 21

                3.      (b)(6)-3 and (b)(7)(C)-3: Names and/or Identifying
                        Information of Third Parties of Investigative Interest ................ 22

                4.      (b)(6)-4 and (b)(7)(C)-4: Names and/or Identifying
                        Information of Third Parties Merely Mentioned ...................... 23

5.     (b)(6)-5 and (b)(7)(C)-5:  Names and/or Identifying Information of Local Law Enforcement Personnel ..................... 24

6.     (b)(6)-6 and (b)(7)(C)-6: Names and/or Identifying Information of Third Party Victims .............................................. 24

E.     The FBI Properly Withheld Information Pursuant to Exemption 7(E) ................................................................................................. 25

1.     (b)(7)(E)-1:  Operational Directives ............................................. 27

2.     (b)(7)(E)-2:  Undercover Operation ............................................. 28

3.     (b)(7)(E)-4:  Internal FBI Secure Fax Numbers and Phone Numbers ...................................................................................... 29

4.     (b)(7)(E)-5:  Sensitive Investigative Techniques and Procedures, Including Deployment of Computer and Internet Protocol Address Verifier ................................................ 29

5.     (b)(7)(E)-6:  Targets of Pen Registers and Trap and Trace Devices ........................................................................................ 30

6.     (b)(7)(E)-7:  Collection and Analysis of Information.................. 31

IV.     The FBI Released All Reasonably Segregable Information ................................ 31

CONCLUSION ............................................................................................. 32

## INTRODUCTION

This action concerns three Freedom of Information Act ("FOIA") requests by plaintiffs the Reporters Committee for Freedom of the Press ("Reporters Committee" or "RCFP") and the Associated Press ("AP") (collectively, "Plaintiffs") to defendant the Federal Bureau of Investigation ("FBI"), a component of defendant the United States Department of Justice ("DOJ") (collectively, "Defendants"), for records concerning the FBI's alleged practice of impersonating members of the news media, and the FBI's policies and procedures related to that alleged practice.  Defendants are entitled to summary judgment because the FBI has fully complied with its obligations under FOIA.  The FBI conducted a reasonable search for records responsive to Plaintiffs' FOIA requests, and released responsive records in compliance with the processing schedule ordered by the Court.  Moreover, the FBI properly withheld records pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  Therefore, Defendants' motion for summary judgment should be granted.

## BACKGROUND

In a letter dated November 6, 2014, the AP submitted a FOIA request to the FBI (the "AP Request"), seeking:

    a.   "Any documents referring to the decision to create the fake AP news article in the Timberline High School case.  In particular, I seek correspondence between the FBI's Seattle office and FBI headquarters about the case.  I also seek a copy of the internal review carried out by the FBI and a copy of the Web link sent by the FBI to suspect in 2007";

    b.   "An accounting of the number of times, between Jan. 1, 2000 and Nov. 6 2014, that the Federal Bureau of Investigation has impersonated media organizations or generated media-style material (including but not limited to emails, webpages or links) to deliver malicious software to suspects or anyone else caught up in an investigation"; and

1

c. "Any documents—including training material, reviews and policy briefings—dealing with the creation and deployment of bogus news stories or media-style material in an investigative context."

*See* Declaration of David M. Hardy ("Hardy Decl.") ¶¶ 5-6 & Ex. A.  The AP also requested expedited processing and a fee waiver.  *See id.*  On December 1, 2014, the FBI acknowledged receipt of the AP Request and, on December 8, 2014, the FBI granted expedited processing as to that request.  Hardy Decl. ¶¶ 7-8 & Exs. B-C.  The FBI granted the AP's request for a fee waiver as to part of the request on December 11, 2014.  *Id.* ¶ 10 & Ex. E.

On October 31, 2014, RCFP submitted a FOIA request to the FBI (the "First RCFP Request"), seeking:

> [A]ll records concerning the FBI's guidelines and policies concerning undercover operations or activities in which a person may act as a member of the news media, including, but not limited to, the guidelines and policies relating to the criminal and national security undercover operations review committees and the Sensitive Operations Review Committee; guidelines and policies concerning the use of investigative methods targeting or affecting the news media, including, but not limited to, sensitive Title III applications; and all guidelines and policies concerning sensitive investigative matters involving the activities of the news media or relating to the status, involvement, or impact of an investigation upon the news media."

Hardy Decl. ¶ 16 & Ex. K.  The First RCFP Request also sought expedited processing and a fee waiver.  *Id.*

Also on October 31, 2014, RCFP submitted a second FOIA request to the FBI (the "Second RCFP Request") (collectively, the "RCFP Requests").  Hardy Decl. ¶ 17 & Ex. L.  The Second RCFP Request sought "all records concerning the FBI's utilization of links to what are, or appear to be, news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the 'Computer and Internet Protocol Address Verifier' (CIPAV)."  *Id.*

2

The FBI acknowledged receipt of the RCFP Requests on November 3, 2014. Hardy Decl. ¶ 18 & Ex. M. On January 8, 2015, the FBI advised RCFP by two separate letters that it was denying RCFP's requests for expedited processing. *Id.* ¶ 22 & Ex. P.[1] The FBI did not make a determination on RCFP's fee-waiver request before this case reached litigation, but the agency now represents that it will not charge RCFP or the AP any fees for its processing of the FOIA requests at issue in this case. Hardy Decl. ¶ 10.

On August 27, 2015, Plaintiffs filed this action. *See* Doc. 1 ("Compl." or "Complaint"). The Complaint asserts a violation of FOIA for failing to respond to the RCFP Requests and the AP Request within 20 days, and alleges wrongful withholding of non-exempt records, failure to conduct a reasonable search, and wrongfully failing to grant RCFP news media fee status and a fee waiver. Compl. ¶¶ 58-81.

On January 15, 2016, the parties filed a joint proposed scheduling order providing that Defendants would complete their production of all non-exempt records responsive to Plaintiffs' FOIA requests on or before February 26, 2016, and setting forth a proposed summary judgment briefing schedule should the parties deem motion practice necessary. *See* Doc. 14. This Court subsequently approved that proposed scheduling order. *See* Doc. 15. On February 26, 2016, the FBI completed its processing of Plaintiffs' FOIA requests and made its release of responsive records to Plaintiffs. *See* Hardy Decl. ¶ 32 & Ex. Y. The FBI advised Plaintiffs that 267 pages of records were reviewed and that 186 pages of records were released in full or in part, with certain information withheld pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(E), 5 U.S.C.

---

[1] The Complaint does not assert a claim for wrongful denial of expedition and, in any event, the Court would not have jurisdiction over such a claim because the FBI has completed its processing of the RCFP Requests. Similarly, because the FBI has now represented that it will not charge RCFP or the AP any fees in connection with its processing of the FOIA requests, RCFP's fee-waiver claim is moot.

§§ 552(b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  *Id.*  The FBI further advised

Plaintiffs that additional responsive records could be located online at a link it provided.  *Id.* ¶ 4

n.1.  The document contained at this link is "The Attorney General's Guidelines on Federal

Bureau of Investigation Undercover Operations."  *Id.* at n.1.  By letter dated March 28, 2016, the

FBI provided Plaintiffs' counsel with a supplemental release including or representing 26 pages

previously withheld in part or withheld in full, wherein the FBI either cited additional applicable

exemptions to withhold information already marked as withheld pursuant to another applicable

exemption, or released additional information.  *Id.* ¶ 33 & Ex. Z.

On March 11, 2016, the parties filed a joint status report.  *See* Doc. 16.  That joint status

report advised the Court that Plaintiffs and Defendants had agreed that motions practice

concerning the adequacy of the FBI's search and its withholding of certain records and/or

portions thereof was necessary, and that the parties intended to brief motions for summary

judgment pursuant to the briefing schedule set forth in the scheduling order.  *Id.* at 2.  Defendants

now move for summary judgment in accordance with the briefing schedule previously ordered

by the Court.[2]

## ARGUMENT

### I.    Legal Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Judicial Watch, Inc. v. HUD*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) (citation and quotation

marks omitted); *see also Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527

(D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment.").

---

[2] The Hardy Declaration contains a more comprehensive summary of the administrative history
of the FOIA requests at issue in this case.  *See* Hardy Decl. ¶¶ 5-33.  This memorandum and the
accompanying statement of material facts includes only those facts that are relevant to
Defendants' motion for summary judgment.

A court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B).

"The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

## II.    The FBI Conducted an Adequate Search for Responsive Records

A defendant agency is entitled to summary judgment in a FOIA case with respect to the adequacy of its search if the agency shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id*.  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphases in original).  An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

The Hardy Declaration demonstrates that the FBI conducted an adequate search for records responsive to Plaintiffs' FOIA requests.  As the Declaration explains, the FBI used several mechanisms to identify documents responsive to the requests.  Hardy Decl. ¶ 34.  Given the number of requests and complex procedural history underlying them, the FBI drew a

distinction between two of the requests' components:  (1) the demand in the Second RCFP Request for "access to and copies of all records concerning the FBI's utilization of links to what are, or appear to be, news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the 'Computer and Internet Protocol Address Verifier'" (hereinafter, "Group 1" or the "Group 1 requests"); and (2) the remaining items sought in the three FOIA requests at issue (hereinafter, "Group 2" or the "Group 2 requests").  *Id.*

In response to a typical FOIA request seeking information about particular investigative subjects, the FBI ordinarily conducts an index search of its Central Records System ("CRS"). Hardy Decl. ¶ 36.  The FBI determined, however, that a search of the CRS would likely not lead to records responsive to Plaintiffs' Group 1 requests.  *Id.*  The FBI reached this conclusion because the CRS is an investigative tool in which FBI employees record index terms in files that are useful to a particular investigation or that contain items—such as names of individuals, organizations, companies, publications, activities, or foreign intelligence matters or programs— that are deemed potentially useful for future retrieval purposes.  *Id.*  The CRS indices, however, are not a repository for policy-related matters, such as the FBI's alleged utilization of the technology and methods covered by Plaintiffs' Group 1 requests.  *Id.*  The FBI thus determined that the CRS indices would not programmatically or logically contain terms that would lead to records responsive to the Group 1 requests.  *Id.*

Instead, the FBI determined that its Operational Technology Division ("OTD")—the Division responsible for the FBI's development and deployment of technology-based solutions to enable and enhance the FBI's intelligence, national security and law enforcement operations— was the component likely to possess records responsive to Plaintiffs' Group 1 request.  Hardy

Decl. ¶¶ 37-40 & n.6.   The FBI's Record/Information Dissemination Section ("RIDS") accordingly sent an Electronic Communication ("EC") to OTD, requesting that OTD conduct a search of its database systems, as well as paper and manual files, for records responsive to the Group 1 requests.  *Id.* ¶ 38.  The EC further recommended that OTD send an email to each of its employees asking them to search for all relevant records pertaining to these requests.  *Id.*  OTD completed the search requested in the EC and informed RIDS that it had located no responsive records.  *Id.* ¶ 40.

With respect to Plaintiffs' Group 2 requests, the FBI determined that the requests sought certain information—records pertaining to guidelines, policies, training material, reviews, policy briefings, accountings, as well as documents merely referring to the decision to create the fake AP news article in the Timberline High School case—that would likely reside with the particular components responsible for the implementation and promulgation of those materials, rather than with the CRS.  Hardy Decl. ¶ 41.  The FBI also determined, however, that records and information sought specifically concerning the Timberline High School investigation would likely be indexed in the CRS.  *Id.*

Accordingly, RIDS first sent an EC to the divisions and units it identified as reasonably likely to possess records responsive to Plaintiffs' Group 2 requests, which RIDS determined were as follows: the FBI's Seattle Division (the originating office for the Timberline investigation), the Office of General Counsel, the agency's Discovery Processing Units,  OTD, the Behavioral Analysis Unit within the Critical Incident Response Group, the National Covert Operations Division within the Criminal Investigative Division, and the Training Division. Hardy Decl. ¶ 43.  The EC requested that each component conduct a search of its electronic databases, as well as its paper and manual files, for records responsive to Plaintiffs' Group 2

requests.  *Id.*  As it had done with the EC pertaining to Plaintiffs' Group 1 requests to OTD, RIDS also recommended that each recipient component send an e-mail to each of its employees asking them to search for all relevant records pertaining to these requests.  *Id.*  Each component responded to the EC and, as a result of these targeted efforts, the FBI was able to locate records responsive to Plaintiffs' requests.  *Id.* ¶¶ 44-45.

After this matter reached litigation, the FBI supplemented its prior efforts by conducting an index search of the CRS, searching the CRS's electronic index using the terms "Timberline," "Timberline High School" and "Timberline Highschool."  Hardy Decl. ¶ 57.  This search did not yield any records that had not already been provided by the Seattle field office in response to the earlier EC.  *Id.*  The FBI also conducted a search of the agency's Electronic Surveillance ("ELSUR") indices, which includes the FBI's records related to electronic surveillance sought, administered, and/or conducted by the FBI since January 1, 1960.  *Id.* ¶ 58.  The FBI searched the ELSUR indices using the same three search terms, and no records were identified as a result of that search.  *Id.*  As a result of these searches, the FBI found no indication that materials responsive to Plaintiffs' FOIA requests would be found anywhere else.  *Id.* ¶ 59.  Nor did the results of either search suggest that other responsive records would likely exist.  *Id.*

By conducting an individualized inquiry of those FBI components that were deemed most likely to have potentially responsive records—and supplementing those efforts by conducting electronic searches of the CRS and ELSUR indices—the FBI employed a reasonable and adequate search "using methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68 (citations omitted).  Therefore, Defendants are entitled to summary judgment on this issue.

**III.     The FBI Has Properly Withheld Information Under Applicable Exemptions**

The FOIA represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).   Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).   Although these exemptions are to be "narrowly construed," *id.* at 630, courts must not fail to give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).   "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation and internal quotation marks omitted).   "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Id.* at 374-75 (citation omitted).

In this case, the information withheld "implicat[es] national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003) (noting that "both the Supreme Court and this Court have expressly recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security"); *see also Larson*, 565 F.3d at 865 ("Today we reaffirm our deferential posture in FOIA cases

9

regarding the 'uniquely executive purview' of national security."). The D.C. Circuit has "consistently deferred to executive affidavits predicting harm to the national security, and ha[s] found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927. The deference owed in cases like this one applies to all relevant exemptions "so long as the government's declarations raise legitimate concerns that disclosure would impair national security." *Id*. at 928.

The Hardy Declaration included with Defendants' motion provides detailed justifications for all of the information the FBI withheld. The Declaration includes coded categories of exemptions detailing the nature of information withheld pursuant to the applicable FOIA exemption(s), provides a detailed summary of the contents of the records, as well as a summary of the bases for withholdings. *See* Hardy Decl. ¶¶ 60-103 & nn. 20-21, 24, 27-42. Courts in the District of Columbia and elsewhere have repeatedly accepted similar submissions from the FBI and other agencies.[3] Defendants are accordingly entitled to summary judgment with regard to the FBI's application of exemptions, the specifics of which are explained further below.

## A.     The FBI Properly Withheld Information Pursuant to Exemption 1

First, the FBI properly withheld classified information pursuant to Exemption 1.[4] This exemption protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."   5 U.S.C.

---

[3] *See, e.g.*, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007); *Keys v. DOJ*, 830 F.2d 337, 349-50 (D.C. Cir. 1987); *Blanton v. DOJ*, 64 F. App'x 787, 789 (D.C. Cir. 2003); *Maynard v. CIA*, 986 F.2d 547, 559 & n.13 (1st Cir. 1993); *Jones v. FBI*, 41 F.3d 238, 242-43 (6th Cir. 1994); *Queen v. Gonzales*, No. Civ. A. 96-1387 (JAR), 2005 WL 3204160, at *3 (D.D.C. Nov. 15, 2005).

[4] Exemption 1 has been asserted on Bates Numbered pages: RCFP-2, 3, 33, 37, 41, 42, and 43. Hardy Decl. ¶ 68 n.20.

§ 552(b)(1).  *See also* Hardy Decl. ¶ 64.  Pursuant to Executive Order 13526, which "prescribes a uniform system for classifying, safeguarding, and declassifying national security information," an agency may classify information if the following conditions are met:

1.  an original classification authority is classifying the information;

2.  the information is owned by, produced by or for, or is under the control of the United States Government;

3.  the information falls within one or more of the categories of information listed in section 1.4 of [the Executive Order]; and

4.  the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, . . . and the original classification authority is able to identify or describe the damage.

Executive Order 13526 § 1.1(a), 75 Fed. Reg. 707 (Jan. 5, 2010); *see also* Hardy Decl. ¶ 66.

A court "accord[s] substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record." *Larson*, 565 F.3d at 864 (citation and quotation marks omitted); *see also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 ("[W]e have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review.").

The Hardy Declaration demonstrates that the FBI has adhered to the procedures set forth in Executive Order 13526 in determining that the information withheld pursuant to Exemption 1 is classified.  *See* Hardy Decl. ¶¶ 67-68.  The Attorney General has designated Mr. Hardy as an original classification and declassification authority.  *See* Executive Order 13526 §§ 1.1(a)(1), 1.3, 3.1; Hardy Decl. ¶ 2.  Mr. Hardy ensured that all of the procedural requirements of

Executive Order 13526 were followed for this FOIA request, including proper identification and marking of documents. *See* Hardy Decl. ¶¶ 67-68.

The classified information withheld in this case also meets the substantive requirements of Executive Order 13526. The withheld information is under the control of the United States Government, Hardy Decl. ¶ 67, and contains information regarding intelligence activities, sources or methods, or cryptology, which is an authorized basis for classification, *see* Executive Order 13526 § 1.4(c); Hardy Decl. ¶¶ 68-70. Information that reveals intelligence activities or methods is protected from disclosure pursuant to section 1.4(c) of Executive Order 13526 and Exemption 1. The information withheld here would reveal the actual intelligence activities and methods used by the FBI against specific targets that have been determined to be of a national security interest. Hardy Decl. ¶ 69; *see also id.* ¶ 70 ("[T]he sources and methods described in these records are used by the FBI in current national security investigations (i.e. intelligence or counterintelligence investigations)."). This information is needed by U.S. intelligence and counterintelligence agencies to carry out their missions, and must be kept confidential if the viability, productivity and usefulness of these intelligence sources and methods are to be preserved. *Id.* ¶ 69,

Mr. Hardy determined that release of this information reasonably could be expected to cause serious damage to the national security of the United States, and therefore should be classified at the "Secret" level. Hardy Decl. ¶¶ 70, 72. In reaching that conclusion, Mr. Hardy evaluated the withheld information "in light of the body of information available to [him] concerning the national defense and foreign relations of the United States." *Id.* ¶ 71. He considered both "the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States' intelligence files, including the secrecy of

that other information," as well as "the impact that other information, either in the public domain

or likely known or suspected by present or potential adversaries of the United States, would have

upon the information [he] examined, and upon attempts by a hostile entity to analyze such

information." *Id.*   And Mr. Hardy's declaration informs Plaintiffs and the Court that, in his

expert judgment, any greater specificity concerning the information withheld could reasonably

be expected to jeopardize the national security of the United States. *Id.* ¶ 72.

The discussion above demonstrates that the FBI has met both the procedural and

substantive requirements of Executive Order 13526.  Therefore, the FBI has sustained its burden

of justifying nondisclosure of the information withheld pursuant to Exemption 1.

### B.      The FBI Properly Withheld Information Pursuant to Exemption 3

Exemption 3 permits agencies to withhold from disclosure records that are "specifically

exempted from disclosure by statute."   5 U.S.C. § 552(b)(3).   Under this exemption, the FBI

"need only show that the statute claimed is one of exemption as contemplated by Exemption 3

and that the withheld material falls within the statute." *Larson*, 565 F.3d at 865.  In this case, the

FBI invokes Section 102A(i)(1) of the National Security Act of 1947 (now codified at 50 U.S.C.

§ 3024(i)(1)) which requires the Director of National Intelligence to "protect intelligence sources

and methods from unauthorized disclosure," as well as the Pen Register Act, 18 U.S.C.

§ 3123(d), which protects from disclosure information pertaining to certain court "order(s)

authorizing or approving the installation and use of a pen register or a trap and trace device" as

well as information pertaining to "the existence of the pen register or trap and trace device or the

existence of the investigation."

1.      (b)(3)-1:  Records Withheld Pursuant to the National Security Act of 1947,
50 U.S.C. § 3024(i)(1)

The FBI withheld portions of 7 pages pursuant to Section 102A(i)(1) of the National

Security Act of 1947, 50 U.S.C. § 3024(i)(1).   Hardy Decl.   ¶¶ 74-76 & n.24.[5]   It is well established that Section 102A(i)(1) is a valid Exemption 3 statute.   *See Larson*, 565 F.3d at 865; *Sack v. CIA*, 49 F. Supp. 3d 15, 21 (D.D.C. 2014).   In fact, the Supreme Court has recognized the "wide-ranging authority" provided by the National Security Act to protect intelligence sources and methods.   *See CIA v. Sims*, 471 U.S. 159, 169-70, 177 (1985).   Thus, the only remaining question is whether the withheld material relates to intelligence sources and methods.   The Hardy Declaration demonstrates that it does.

Section 102A(i)(2)(A) provides that "the Director of National Intelligence shall establish and implement guidelines for the intelligence community for the . . . [c]lassification of information under applicable law, Executive orders, or other Presidential directives."   50 U.S.C. § 3024(i)(2)(A); *see also* Hardy Decl. ¶ 75.   The FBI is one of 17 member agencies comprising the Intelligence Community, and is therefore obligated to protect intelligence sources and methods.   *See id.*   Mr. Hardy reviewed the information withheld under Exemption 3 pursuant to Section 102A(i)(1), and determined that the FBI's intelligence sources and methods would be revealed if any of the withheld information were disclosed to Plaintiffs.   *Id.* ¶ 76; *see also* pp. 12-13, *supra*.   The FBI is prohibited from disclosing the information under 50 U.S.C. § 3024(i)(1), and this information was thus properly withheld pursuant to Exemption 3 (and in conjunction with Exemptions 1 and 7(E) where applicable).   *Id.*; *see also Sims*, 471 U.S. at 179 ("The decisions of the Director, who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake.").

---

[5] Exemption (b)(3)-1 has been asserted on Bates Numbered pages: RCFP-2, 3, 33, 37, 41-43. Hardy Decl. ¶ 76 n.24.

2.     (b)(3)-2:  Records Withheld Pursuant to the Pen Register Act, 18 U.S.C. § 3123(d)

The FBI withheld portions of six pages pursuant to the Pen Register Act, 18 U.S.C. § 3123(d).[6]  Hardy Decl. ¶ 77 & n.27.  Section 3123(d) is also a valid Exemption 3 statute.  *See Sennett v. DOJ*, 962 F. Supp. 2d 270, 283 (D.D.C. 2013); *Brown v. FBI*, 873 F. Supp. 2d 388, 401 (D.D.C. 2012); *Roberts v. FBI*, 845 F. Supp. 2d 96, 101-02 (D.D.C. 2012).  The statute directs that "[a]n order authorizing or approving the installation and use of a pen register or a trap and trace device . . .  be sealed until otherwise ordered by the court" and prohibits disclosure of  "the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1)-(2).  In this case, the material withheld pursuant to the Pen Register Act contains information that, if disclosed, would reveal either the existence or use of a pen register or trap and trace device, or reveal the existence of an investigation involving a pen register or trap and trace device.  Hardy Decl. ¶ 77.   The FBI thus properly withheld this information pursuant to Exemption 3 (and in conjunction with Exemption (7)(E)).  *Id.*; *see also* pp. 30, *infra*.

## C.     The FBI Properly Withheld Information Pursuant to Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  Records are exempt from disclosure if they would be "normally privileged in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Thus, Exemption 5 incorporates the privileges that are available to an agency in civil litigation, including the deliberative process privilege.  *See id.* at 148-50.   Here the FBI withheld

---

[6] Exemption (b)(3)-2 has been asserted to withhold information on Bates Numbered pages: RCFP- 3, 33-34, 37-38, 155.  Hardy Decl. ¶ 77 n.27.

documents pursuant to the deliberative process privilege, as well as the attorney-client privilege.

1.      (b)(5)-1:  Records Withheld Pursuant to the Deliberative Process Privilege

The FBI withheld material on six pages pursuant to the deliberative process privilege. *See* Hardy Decl. ¶¶ 79-82 & n.28.[7]  The deliberative-process privilege is intended "to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 9 (2001) (citation omitted).  The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* at 8–9; *see also Dow Jones & Co., Inc. v. DOJ*, 917 F.2d 571, 573-74 (D.C. Cir. 1990). The deliberative process privilege protects intra- or inter-agency documents that are both "predecisional and deliberative." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  A document is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  The deliberative process privilege therefore applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id*. at 866.

Here, the FBI asserted the deliberative process privilege with regard to one page (and portions of three others) reflecting communications between FBI employees concerning the scope and focus of an investigation as well as any related prosecutions. Hardy Decl. ¶ 82.  These records are covered by the deliberative process privilege.   The materials are predecisional because they precede final investigative and/or prosecutorial decisions.  *Id.*   And they are

---

[7] Exemption (b)(5)-1 has been asserted on Bates Numbered pages: RCFP- 25, 26, 27, 30, 51, and 52.  Hardy Decl. ¶ 82 n.28.

deliberative in that they played a part in the process by which specific decisions were made about the scope and focus of the investigation and prospective prosecution at issue. *Id.* Therefore, this information falls within the scope of the deliberative process privilege and the FBI properly withheld this information under Exemption 5.

2.     (b)(5)-2:  Records Withheld Pursuant to the Attorney-Client Privilege

Pursuant to Exemption 5, the FBI also withheld material on five pages pursuant to the attorney-client privilege. *See* Hardy Decl. ¶¶ 83-84 & n.29.[8]   The attorney-client privilege "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citing *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Id.* To invoke the attorney-client privilege, a party must demonstrate that the document it seeks to withhold: (1) involves "confidential communications between an attorney and his client"; and (2) relates to "a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

The FBI has properly asserted attorney-client privilege over confidential communications between and among FBI counsel and their FBI client employees. Hardy Decl. ¶ 84. The records withheld in this category consist of legal advice provided with respect to an ongoing investigation and related prosecution. *Id.* The Hardy Declaration explains that "[t]hese communications were made in confidence and for the purpose of formulating and dispensing legal advice." *Id.* Accordingly, these documents were properly withheld under the attorney-client privilege.

---

[8] Exemption (b)(5)-2 has been asserted on Bates Numbered pages: RCFP 25, 26, 27, 30, and 52. Hardy Decl. ¶ 84  n.29.

**D.      The FBI Properly Withheld Information Pursuant to Exemptions 6 & 7(C)**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599–600 (1982) ("[T]he primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters.") (citation omitted).  For this exemption to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual."  *Id.* at 602.  Once this threshold requirement is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure. *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

The balancing analysis required by Exemption 6 is similar to the balancing analysis required by Exemption 7(C), which authorizes withholding of records compiled for law enforcement purposes if their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  This exemption also requires the agency to balance the relevant individual privacy rights against the public interest in disclosure.  *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).  The balancing analysis is similar to the analysis conducted under Exemption 6, but the analysis under Exemption 7(C) tilts more in favor of nondisclosure. *See id.* at 756 (comparing statutory language of Exemption 6 and Exemption 7(C)); *Reed*, 927 F.2d at 1251 (explaining similarity of Exemption 6 analysis and Exemption 7(C) analysis).

"To fall within any of the exemptions under the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'"  *Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n* ("*PEER*"), 740 F.3d 195, 202 (D.C. Cir. 2014) (quoting 5

U.S.C. § 552(b)(7)).  "According to the Supreme Court, the term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Id*. at 203 (citation omitted). "If the agency's principal function is law enforcement" a court is "more deferential to the agency's claimed purpose for [] particular records." *Id*. (citation and internal quotation marks omitted).

Here, the Hardy Declaration explains that the information withheld pursuant to Exemption 7 (both the materials withheld pursuant to Exemption 7(c) and those withheld pursuant to Exemption 7(E)) were compiled for law enforcement purposes.  Hardy Decl. ¶ 85. The FBI is the primary investigative agency of the federal government, and it is charged with investigating violations of federal law, as well as conducting investigations and activities to protect the national security of the United States, and to further the United States' foreign intelligence objectives.  *Id*.  And the materials withheld under Exemption 7 involve records "compiled for purposes of investigating and gathering intelligence information, and apprehending and prosecuting subjects suspected of terrorism against the United States," as well as records compiled during the investigation of a third-party subject for violations of two federal statutes.  *Id*.  These records were compiled for a law enforcement purpose and, indeed, fall squarely within the law enforcement duties of the FBI.

Courts broadly construe the privacy interests protected by Exemptions 6 and 7(C). *See Reporters Comm.*, 489 U.S. at 763 (noting that "privacy encompass[es] the individual's control of information concerning his or her person").  On the other hand, "the only relevant public interest in the . . .  balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let

citizens know what their government is up to." *DOD v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (citation and internal quotation marks omitted).

For the six categories of information described below, the FBI determined that the individual's interest in personal privacy outweighed any public interest in disclosure. Hardy Decl. ¶ 86. Therefore, the information was properly withheld pursuant to Exemptions 6 and 7(C). *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (upholding withholding of names and other private information regarding law enforcement officials, other government employees, and third-party individuals); *Light*, 968 F. Supp. 2d at 28-29 (upholding withholding of names of federal and state law enforcement officers, as well as third parties merely mentioned in records, pursuant to Exemptions 6 and 7(C)).

1. (b)(6)-1 and (b)(7)(C)-1: Names and/or Identifying Information of FBI Special Agents and Support Personnel

In this category, the FBI has withheld portions of 101 pages to redact the names and/or identifying information of FBI Special Agents and support personnel who were responsible for conducting, supervising, or maintaining investigative activities, and for conducting, supervising, or maintaining the day-to-day FBI activities reported in the underlying documents. Hardy Decl. ¶¶ 87-88 & n.31.[9] The FBI concluded that these individuals have substantial privacy interests in being free from unnecessary questioning as to the conduct of these investigation or other investigations, whether or not the individuals are currently employed by the FBI. *Id.* ¶ 87. Moreover, the FBI concluded that publicity regarding any particular investigation (whether that publicity was positive or negative) could seriously prejudice those individuals' effectiveness in

---

[9] Exemption (b)(6)-1 and (b)(7)(C)-1 has been asserted on Bates Numbered pages: RCFP 1-4, 10, 16, 25-27, 30, 33-35, 37-41, 44-45, 55, 57-59, 62-65, 74-75, 77-78, 101-153, 155, and 157 and, upon further review by the FBI, on Bates Numbered pages: RCFP 161-174. Hardy Decl. ¶ 88 n.31

conducting and assisting in other investigations.  *Id.*  Disclosing the identities of the individuals involved in investigations could also trigger hostility towards the particular agents involved, and subject them to possible revenge by an individual targeted by such law enforcement actions.  *Id.* ¶ 88.  Furthermore, both the Special Agents and support personnel were, and possibly still are, in positions of access to information regarding law enforcement investigations, and could become targets of harassing inquiries for unauthorized access if their identities were disclosed.  *Id.*  These are unquestionably valid privacy interests for purposes of Exemption 6 and 7(C).  *See, e.g., Baez v. DOJ*, 647 F.2d 1328, 1339 (D.C. Cir. 1980); *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) ("Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs." (citation omitted)).

By contrast, there is no public interest in the disclosure of the names and/or identifying information of these employees because this information would not significantly increase the public's understanding of the operations and activities of the FBI.  Hardy Decl. ¶ 88.  Therefore, the FBI properly withheld these individuals' names and/or identifying information.  *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) (noting that privacy interests always prevail in the Exemption 6 balancing analysis if there is no public interest in disclosure because "something, even a modest privacy interest, outweighs nothing every time").

2.     (b)(6)-2 and (b)(7)(C)-2:  Names and/or Identifying Information of Non-FBI Federal Government Personnel

In this category, the FBI withheld portions of four pages to redact the names and/or

identifying information of non-FBI federal government personnel.  Hardy Decl. ¶ 89 & n.32.[10]

The rationale for protecting these non-FBI federal employees is the same as the rationale for

withholding similar information of FBI Special Agents and support personnel.  *Id.*  ¶ 89.  Release

of these individuals' names and/or identifying information could expose them to unauthorized

inquiries and harassment.  *Id.*  The individuals' privacy interests are thus substantial, and there

would be no public interest in disclosure of the information because disclosure would not

significantly increase the public's understanding of the operations and activities of the federal

government.  Therefore, the FBI properly withheld this information.  *Id.*; *see also Sussman*, 494

F.3d at 1115 (upholding withholding of names and other private information regarding law

enforcement officials); *Light*, 968 F. Supp. 2d at 28-29; *Lewis-Bey v. DOJ*, 595 F. Supp. 2d 120,

134-35 (D.D.C. 2009).

3.      (b)(6)-3 and (b)(7)(C)-3:  Names and/or Identifying Information of Third
Parties of Investigative Interest

In this category, the FBI withheld portions of 13 pages to redact the names and/or other

identifying information of third parties who were of investigative interest to the FBI and other

law enforcement agencies, such as individuals identified as the subject of a criminal investigation

related to a bomb threat and distributed denial of service in the Timberline School District.

Hardy Decl. ¶ 90 & n.33.[11]  These individuals obviously maintain substantial privacy interests in

not having their identities disclosed, since such associations carry a strongly negative

connotation, and could subject those individuals to harassment or embarrassment, as well as

undue public attention.  *Id.* ¶ 90; *see also Comput. Prof'ls for Soc. Responsibility v. United States*

---

[10] Exemption (b)(6)-2 and (b)(7)(C)-2 has been asserted on Bates Numbered pages: RCFP 25, 26, 30 and 35.  Hardy Decl. ¶ 89 n.32.

[11] Exemption (b)(6)-3 and (b)(7)(C)-3 has been asserted on Bates Numbered pages: RCFP 2, 44, 46, 48-50, 57, 78-79, and 156-159.  Hardy Decl. ¶ 90 n.33.

*Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting the "strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity" (quotation marks omitted)).   And because disclosing personal information about these individuals would not significantly increase the public's understanding of government activities, the FBI correctly concluded that there was no public interest here sufficient to override these individuals' substantial privacy interests.   Hardy Decl. ¶ 90. Therefore, the FBI properly withheld this information pursuant to FOIA Exemptions 6 and 7(C).

4.   (b)(6)-4 and (b)(7)(C)-4:  Names and/or Identifying Information of Third Parties Merely Mentioned

In this category, the FBI withheld portions of 49 pages to redact the names and identifying information of third parties merely mentioned in the responsive documents.  Hardy Decl. ¶ 91 & n. 34.[12]   These individuals are third parties who came into contact with the subjects of the FBI's investigations and about whom the FBI obtained information, but who were not of investigative interest to the FBI.  *Id.* ¶ 91.  Disclosure of these individuals' names and identifying information—which would reveal that these individuals were connected with the FBI's investigations—would likewise carry a strongly negative connotation, and would subject these individuals to possible harassment, criticism, derogatory inferences, and suspicion.  *Id.*  These individuals thus have a substantial privacy interest in non-disclosure.  *See Lewis-Bey*, 595 F. Supp. 2d at 135  ("Individuals involved in law enforcement investigations, 'even if they are not the subject of the investigation[,] have a substantial interest in seeing that their participation remains secret.'"  (quoting *Willis v. DOJ*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008)).  Conversely, disclosure of this information would not shed any light on the operations and activities of the

---

[12] Exemption (b)(6)-4 and (b)(7)(C)-4 has been asserted on Bates Numbered pages: RCFP 62, 74, 101-104, 106-113, 116, 118-122, 124-128, 134-149, 151-153, and 155-159.  Hardy Decl. ¶ 91 n.34.

FBI.   Hardy Decl. ¶ 91.   Therefore, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

> 5.    (b)(6)-5 and (b)(7)(C)-5:  Names and/or Identifying Information of Local Law Enforcement Personnel

In this category, the FBI withheld portions of 17 pages to redact the names and/or identifying information of local law enforcement personnel who, acting in their official capacity, aided the FBI in the law enforcement investigative records responsive to the FOIA requests. Hardy Decl. ¶ 92 & n.35.[13]  The rationale for protecting these local law enforcement personnel is the same as the rationale for withholding similar information of FBI Special Agents and support personnel.   *Id.* ¶ 92.   The FBI concluded that releasing the identities of these local law enforcement personnel could subject them to harassment, and make them prime targets for compromise if their identities were known.   *Id.*   The individuals' privacy interests are thus substantial, and there would be no public interest in disclosure of their names and identifying information.   *Id.*   Therefore, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).   *See, e.g.*, *Light*, 968 F. Supp. 2d at 28-29 (upholding withholding of names of federal and state law enforcement officers pursuant to Exemptions 6 and 7(C)).

> 6.    (b)(6)-6 and (b)(7)(C)-6: Names and/or Identifying Information of Third Party Victims

Finally, the FBI withheld portions of 35 pages to redact the names and other identifying information of victims of a crime.  Hardy Decl. ¶ 93 & n.36.[14]  The FBI concluded that there was a strong privacy interest in protection of such personal information, because disclosure of a

---

[13] Exemption (b)(6)-5 and (b)(7)(C)-5 has been asserted on Bates Numbered pages: RCFP 2, 34, 38-40, 75-76, 103, 107, 117, 121, 125, 140, 151-152, 155, and 159.  Hardy Decl. ¶ 92 n.35.

[14] Exemption (b)(6)-6 and (b)(7)(C)-6 has been asserted on Bates Numbered pages: RCFP 1-2, 55, 58-59, 102-104, 106-108, 110-113, 120-122, 124-126, 128, 140-149, 152-153, and 157. Hardy Decl. ¶ 93 n.36

victim's identity could cause personal distress and embarrassment—as well as other harm—to the victim. *Id.* ¶ 93. By contrast, the FBI could identify no discernible public interest in publicly disclosing this information, because doing so would not shed light on the operations and activities of the FBI. *Id.* Therefore, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

### E. The FBI Properly Withheld Information Pursuant to Exemption 7(E)

To withhold information pursuant to Exemption (7)(E), the agency must demonstrate that release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts are divided as to whether the phrase "if such disclosure could reasonably be expected to risk circumvention of the law" applies only to "guidelines" or also applies to "techniques and procedures." *See PEER*, 740 F.3d at 204 & n.4. However, the better reasoned decisions recognize that providing categorical protection to "techniques and procedures" (i.e., not requiring a showing that "disclosure could reasonably be expected to risk circumvention of the law") is consistent with both the plain meaning of the statute and the history of the amendments to exemption (7)(E) in 1986. *See Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681 (2d Cir. 2010) (finding that the "sentence structure of Exemption (b)(7)(E)" and "basic rules of grammar and punctuation dictate that the qualifying phrase modifies only the . . . 'guidelines' clause" and that "[a]ny potential ambiguity in the statute's plain meaning is removed . . . by the history of the statute's amendments"); *Durrani v. DOJ*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009); *Jewett v. U.S. Dep't of State*, No. 11-cv-1852 (RLW), 2013 WL 550077, at *9 (D.D.C. Feb. 14, 2013).

Even if a showing that "disclosure could reasonably be expected to risk circumvention of the law" were required to protect these "techniques and procedures" from disclosure, the "risk circumvention of the law" requirement presents a "low bar." *See PEER*, 740 F.3d at 204 n.4 (saying that "it is not clear" that the issue of whether an agency needs to show that disclosure of a technique or procedure could reasonably be expected to risk circumvention of the law "matters much in practice" given the "low bar" for the circumvention requirement). "[T]he text of exemption 7(E) is much broader" than other exemptions that "set a high standard." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] 'demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law.'" *See id.* (citation omitted). Therefore, Exemption 7(E) "exempts from disclosure information that could *increase the risks* that a law will be violated or that past violators will escape legal consequences." *See id.* at 1193.

Exemption 7(E) also permits an agency to withhold information regarding non-public details about commonly-known procedures if the disclosure of such details could reduce or nullify their effectiveness. *See, e.g.*, *Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) (recognizing that "[t]here is no principle . . . that requires an agency to release all details concerning these and similar techniques simply because some aspects of them are known to the public").

The FBI has also properly withheld information pursuant to Exemption 7(E). This exemption has been applied to the records at issue here to protect sensitive investigatory techniques, procedures, and guidelines authorized for use by the FBI to pursue its law enforcement missions, such as protecting the nation from security risks posed by U.S. and non-

U.S. entities as well as foreign nations that seek to harm the United States.  Hardy Decl. ¶¶ 94-95.   Revelation of specific investigative techniques, procedures, and guidelines could enable criminals and terrorist groups who seek to harm U.S. interests to learn the FBI's tactics to gather information, develop countermeasures to evade detection, and otherwise use the information to their advantage.  *Id*. ¶ 95.  The FBI withheld six specific categories of information pursuant to this Exemption.  *Id*. ¶¶ 96-103.  As explained below, the FBI's withholding of the following information related to sensitive investigatory techniques and procedures was proper.[15]

1.      (b)(7)(E)-1:  Operational Directives

In this category, the FBI withheld all or part of 34 pages comprising information contained in the FBI's Domestic Investigations and Operations Guide, Field Guides, its Manual of Administrative Operations and Procedures, and its Manual of Investigative Operations Guidelines.  Hardy Decl. ¶ 96 & n.37.[16]  The material withheld consists of operational directives that inform and instruct FBI employees on how to properly use certain sensitive, non-public techniques and guidance for conducting investigations (and, in providing this instruction, identifies the sensitive, non-public procedures, techniques, and strategies at issue).  *Id.* ¶ 96.  This information was properly withheld under Exemption 7(E), both as law enforcement techniques and procedures, and as law enforcement guidelines.  *Id.*  Releasing such information would inform criminals and potential lawbreakers of sensitive, unknown investigative techniques used by the FBI, as well as particular unknown uses of them.  *Id.*  If the FBI were to provide such "a unique look inside the FBI's law enforcement and national security 'playbooks,'" criminals

_____

[15] The Hardy Declaration provides as much information as the FBI has determined it can provide regarding the withheld material, without disclosing techniques, procedures, and guidelines that could reasonably be expected to risk circumvention of the law.  *See* Hardy Decl. ¶ 94.

[16] Exemption (b)(7)(E)-1 has been asserted on Bates Numbered pages:  RCFP 52, 178, 179, 181, 186, 192, 194-196, 199, 204-205, 208, 210-211, 213, 218, 247-248, 250, 253-255, and 257-267. Hardy Decl. ¶ 96 n.37

and potential lawbreakers could predict how the FBI might respond to certain criminal and suspicious activities, learn the techniques the agency would likely employ in response to those activities, and would be able to preemptively modify their behavior to evade detection and disrupt the very techniques, procedures, and strategies set forth in the guides. *Id.* Because release of this information would provide criminals and other lawbreakers (as well as those who might otherwise threaten U.S. national security) an opportunity to evade detection and circumvent the law, the FBI properly withheld these records under Exemption 7(E). *Id.*; *see also Soghoian v. DOJ*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (information on investigative techniques to be used in conducting investigations properly withheld under Exemption 7(E)); *Blackwell v. FBI*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010) (upholding FBI's withholding of information regarding procedures used in the forensic examination of computers on the ground that "disclosure potentially would aid others in circumventing future FBI investigations"); *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995) (concluding that a form was properly withheld under Exemption 7(E) because "disclosure of this information would help plaintiff or potential criminals predict future investigative actions by the FBI and consequently employ countermeasures to neutralize those techniques").

  2.  (b)(7)(E)-2:  Undercover Operation

  In this category, the FBI withheld all or part of 47 pages containing non-public information about an undercover operation conducted by the FBI.  Hardy Decl. ¶ 97 & n.38.[17] This information was properly withheld under Exemption 7(E), since disclosure of non-public details about the FBI's execution of an undercover operation (including the specific techniques used in that operation) would have significantly negative operational consequences and would

---

[17] Exemption (b)(7)(E)-2 has been asserted on Bates Numbered pages: RCFP 3, 44-45, 49, 52-53, 55-61, 62-63, 65-75, 114-115, 129-132 and 139-153.  Hardy Decl. ¶ 97 n.38.

jeopardize the FBI's ability to conduct undercover operations in similar cases or under similar circumstances in the future, thus risking circumvention of the law.  *Id.* ¶ 97; *see also Lewis-Bey*, 595 F. Supp. 2d at 138 (details of ATF electronic surveillance techniques, including the specific location where they were employed and specific timing, were exempt from disclosure under Exemption (7)(E)).

### 3.        (b)(7)(E)-4:  Internal FBI Secure Fax Numbers and Phone Numbers

In this category, the FBI withheld portions of two pages to protect internal secure fax numbers and phone numbers.  Hardy Decl. ¶ 98 & n.39.  Disclosure of this information could reasonably be expected to risk circumvention of the law because it would expose the FBI's non-public data to misuse, exploitation, and unauthorized access.  *Id.* ¶ 98.  Release of the information would also allow individuals to disrupt the FBI's official business, and subject the FBI's employees to harassing phone calls and facsimiles.  *Id.*  Courts have upheld the FBI's withholding of similar information pursuant to Exemption 7(E), and this Court should do the same.  *See Light*, 968 F. Supp. 2d at 29; *Jewett*, 2013 WL 550077, at *9 (D.D.C. Feb. 14, 2013).[18]

### 4.        (b)(7)(E)-5:  Sensitive Investigative Techniques and Procedures, Including Deployment of Computer and Internet Protocol Address Verifier

In this category, the FBI withheld all or part of 25 pages comprising non-public details concerning its deployment of the Computer and Internet Protocol Address Verifier ("CIPAV"), in addition to other techniques and procedures used by the FBI in criminal and national security investigations.  Hardy Decl. ¶¶ 99-100 & n.40.[19]  The records withheld in this category include

---

[18] Exemption (b)(7)(E)-4 is being asserted to withhold portions of information contained on Bates Numbered pages: RCFP 26 and 30.  Hardy Decl. ¶ 98 n.39.

[19] Exemption (b)(7)(E)-5 has been asserted on Bates Numbered pages: RCFP 3, 4, 10, 25, 26, 30, 34, 38-49, 53, 54, 74, 116, and 137-138.  Hardy Decl. ¶ 100 n.40.

both non-public information revealing the types of techniques and procedures generally used in such investigations, as well as non-public details concerning their use.  *Id.* ¶ 99.  Disclosure of these information-gathering methods and techniques could reasonably be expected to risk circumvention of the law because this information would enable the targets of those methods and techniques to avoid detection and to develop countermeasures against the FBI's use of such methods and procedures in future investigations.  *Id.* ¶ 100.  This information was properly withheld pursuant to Exemption 7(E).  *See Soghoian*, 885 F. Supp. 2d at 75 (information on investigative techniques to be used in conducting investigations properly withheld under Exemption 7(E)); *Durrani*, 607 F. Supp. 2d at 91 (surveillance techniques not known to subjects or potential subjects of an ongoing investigation were properly withheld pursuant to Exemption (7)(E)).

5.      (b)(7)(E)-6:  Targets of Pen Registers and Trap and Trace Devices

In this category, the FBI withheld portions of six pages containing non-public details about targets of FBI pen registers and trap and trace devices.  Hardy Decl. ¶ 101 & n.41.[20]  For reasons discussed previously, these records were properly withheld under Exemption 3.  *See* pp. 15, *supra*.  These records are also exempt from disclosure under Exemption 7(E) because release about the targets, together with other contextual information within these documents, would reveal when and why the FBI decides to utilize such devices, thus enabling criminals to develop countermeasures that would allow them to evade detection and disruption.  Hardy Decl. ¶ 101.  Because the records withheld in this category would, if released, enable criminals to circumvent the law, they were properly withheld under Exemption 7(E), in addition to Exemption 3.

---

[20] Exemption (b)(7)(E)-6 has been asserted on Bates Numbered pages: RCFP 3, 33, 34, 37, 38, 155.  Hardy Decl. ¶ 101 n.41.

6.      (b)(7)(E)-7:  Collection and Analysis of Information

In this final Exemption 7 category, the FBI withheld all or part of 24 pages containing the techniques and procedures it uses to analyze information in connection with criminal and national security investigations.  Hardy Decl. ¶¶ 102-103 & n.42.[21]  The records withheld in this category include the methods used, how and from where the FBI collects information, and how the FBI analyzes the information collected.  *Id.* ¶ 102.  Disclosure of this information could reasonably be expected to lead to circumvention of the law, because public revelation of the techniques used by the FBI would undermine the effectiveness of those techniques, as well as allow criminals to employ countermeasures.  *Id.*  Releasing information about the use of particular methods would also reveal the types of activities, facts, or occurrences that are of interest to the FBI in conducting its investigations, also enabling criminals to alter their behavior to circumvent detection and to mislead investigators.  *Id.* ¶ 103.  These materials were properly withheld under Exemption 7(E).  *See, e.g.*, *Soghoian*, 885 F. Supp. 2d at 75 ("Knowing what information is collected, how it is collected, and more importantly, when it is *not* collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection."); *Blackwell*, 680 F. Supp. 2d at 92 (D.D.C. 2010) (explaining that "the manner in which . . . data is searched, organized, and reported to the FBI," when not known to the public, "potentially would aid others in circumventing future FBI investigations" and thus was exempt from disclosure both under Exemption 7(E) and under Exemption 2).

## IV.     The FBI Released All Reasonably Segregable Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to

---

[21] Exemption (b)(7)(E)-7 has been asserted on Bates Numbered pages: RCFP 103-105,  and 155-174 and, upon further review, the FBI also asserts (b)(7)(E)-7 to withhold information on Bates Numbered page: RCFP 2.  Hardy Decl. ¶ 103 n.42.

any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The FBI has met that burden here because "[a] line by line review was conducted to identify non-exempt information that could be reasonably segregated from exempt information for release." Hardy Decl. ¶ 104. Where pages of records were released in part with redactions, the pages contained a mixture of material that could be reasonably segregated for release. *Id.* ¶ 105(a). Where pages were withheld in full, "there was no information that could be reasonably segregated for release without triggering foreseeable harm to one or more of the cited FOIA exemptions" (or, in the case of 22 pages, the pages were duplicative of other pages processed). *Id.* ¶ 105(b). Therefore, the FBI is entitled to summary judgment on this issue. *See Sussman*, 494 F.3d at 1117 ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (agency demonstrated there was no reasonably segregable non-exempt information where it submitted affidavit showing that agency had conducted line-by-line review of each document withheld in full).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment.

DATED this 28th day of March, 2016.          Respectfully submitted,

                                             BENJAMIN C. MIZER
                                             Principal Deputy Assistant Attorney General

                                             ELIZABETH J. SHAPIRO
                                             Deputy Director
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch

                                             _/s/ Andrew M. Bernie_
                                             ANDREW M. BERNIE (DC BAR# 995376)
                                             Trial Attorney
                                             U.S. Department of Justice
                                             Civil Division
                                             Federal Programs Branch
                                             20 Massachusetts Avenue, N.W.
                                             Washington, D.C. 20530
                                             Telephone:  (202) 616-8488
                                             Fax:  (202) 616-8470
                                             E-mail:  andrew.m.bernie@usdoj.gov

                                             *Counsel for Defendants*