# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**,

and

**THE ASSOCIATED PRESS**,

        Plaintiffs,

    v.

**FEDERAL BUREAU OF INVESTIGATION**,

and

**UNITED STATES DEPARTMENT OF JUSTICE**

        Defendants.

Civil Action No. 15-cv-1392 (RJL)

## PLAINTIFFS' COMBINED STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE AND RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 7(h), Plaintiffs the Reporters Committee for Freedom of the Press ("Reporters Committee" or "RCFP") and The Associated Press ("AP") (collectively, "Plaintiffs"), hereby submit their combined statement of material facts as to which there is no genuine issue ("Plaintiffs' SMF") and response to the statement of material facts submitted by Defendants the Federal Bureau of Investigation ("FBI") and United States Department of Justice ("DOJ") ("Defendants' SMF").[1]

---

[1] The numbered paragraphs in Plaintiffs' response, below, correspond to those in the Defendants' SMF.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

1–12.   Undisputed.

13.    Disputed, but immaterial.  Plaintiff Reporters Committee never received a letter denying expedited processing with respect to FOIPA Request. No. 1319138-000.  Townsend Decl. ¶ 17.  Defendants' SMF ¶ 13 is immaterial as RCFP does not intend to challenge Defendants' denial of expedited processing with respect to Request. No. 1319138-000.

14.    Disputed in part.  Undisputed that Defendants released records to Plaintiffs' counsel under cover of letter dated February 26, 2016.  Disputed that Defendants complied with their legal obligations in connection with the "processing of Plaintiffs' FOIA requests," and thus that such processing has been "completed."  To the extent that Defendants' SMF ¶ 14 contains argument and/or conclusions of law, they should be disregarded by the Court.[2]

15.    Disputed in part.  Undisputed that, under cover of letter dated March 28, 2016, Defendants provided Plaintiffs' counsel with 26 pages previously withheld in part, and asserted additional exemptions to withhold information already marked as withheld pursuant to another exemption.  Disputed that Defendants made a "supplemental release" of "26 pages previously withheld in part or withheld in full."  None of the 26 pages were previously withheld in full, *see* Townsend Decl. ¶ 22 & Hardy Decl. Ex. Z (ECF 18-9), and the only additional release of

---

[2] *See* Local Rule 7(h)(1) (stating that a motion for summary judgment "shall be accompanied by a statement of material *facts* as to which the moving party contends there is no genuine issue[.]" (emphasis added); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) (rejecting assertion that "relevant facts" section of opposition memorandum satisfied then-applicable Rule 108(h) governing statements of undisputed material facts for, among other things, "repeatedly blending factual assertions with legal argument"); *Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002) (rejecting statement of material facts as complying with this Court's local rules because it incorporated a memo that "liberally mixe[d] facts with argument").

information consists of one word on RCFP-63 and four and a half words and an icon for an attachment to an email on RCFP-65, *see* Townsend Decl. ¶ 22 & Hardy Decl. Ex. Z (ECF 18-9). Disputed that the exemptions cited by Defendants are "applicable."  To the extent that Defendants' SMF ¶ 15 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

16.    Undisputed.

17.    Undisputed that Defendants have represented that they will not charge "RCFP or the AP any fees for its processing of the FOIA requests at issue in this case."

18.    Disputed in part.  Undisputed that as to "the pages withheld in full or withheld in part," the FBI has categorically asserted "FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  Disputed that Defendants have properly "withheld certain information pursuant to" those exemptions.  To the extent that Defendants' SMF ¶ 18 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

19.    Disputed in part.  Undisputed that the FBI limited its search for records responsive to RCFP's request for "records concerning the FBI's utilization of links to what are or appear to be news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the 'Computer and Internet Protocol Address Verifier' (CIPAV)," to its Operational Technology Division ("OTD").  Disputed that the FBI could have reasonably or lawfully "determined that" OTD was the only "component likely to possess records responsive to that request."  *See* Plaintiffs' SMF ¶¶ 52, 54, 59, 61–63, 86–89.  To the extent that Defendants' SMF ¶ 19 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

20.     Disputed in part.  Undisputed that the FBI's Record/Information Dissemination

Section ("RIDS") sent an Electronic Communication ("EC") to OTD, requesting that it conduct a

search of database systems, as well as paper and manual files, for records responsive to RCFP's

request for "records concerning the FBI's utilization of links to what are or appear to be news

media articles or news media websites to install data extraction software, remote access search

and surveillance tools, or the 'Computer and Internet Protocol Address Verifier' (CIPAV)," or

that "the EC further recommended that OTD send an email to each of its employees asking them

to search for all relevant records pertaining to this request."  Undisputed that OTD "informed

RIDS that it located no records responsive to this request."  Disputed that "OTD completed the

search" as requested in the EC—including that each OTD employee searched for all relevant

records pertaining to this request—which is unsupported by the cited portions of the Hardy

Declaration.  *See* Hardy Decl. ¶¶ 38-39.

21.     Disputed in part.  Undisputed that the FBI sent an EC to the FBI's Seattle

Division, the Office of General Counsel, its Discovery Processing Units, OTD, the Behavioral

Analysis Unit within the Critical Incident Response Group, the National Covert Operations

Division within the Criminal Investigative Division, and the Training Division requesting that

they search for records responsive to what Defendants have defined as the "Group 2" portions of

Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶ 34 (defining "Group 2").   Disputed that "the FBI

searched for documents" in those offices and/or divisions as requested in the EC, which is

unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶¶ 43-44.

22.     Disputed in part.  Undisputed that "RIDS requested that each component"

identified in Defendants' SMF ¶ 21 conduct a search of its electronic databases as well as its

paper and manual files" or that it "recommended that each recipient component send an e-mail to

each of its employees asking them to search for all records responsive to" what Defendants have defined as the "Group 2" portions of Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶ 34 (defining "Group 2").  Further undisputed that "[e]ach component responded" in some manner, or that the "FBI was able to locate" some "records responsive to" what Defendants have defined as the "Group 2" portions of Plaintiffs' FOIA Requests.

Disputed that "each component" identified in Defendants' SMF ¶ 21 conducted a search as requested and recommended by RIDS—including that each employee of each component searched for all relevant records pertaining to these requests—which is unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶¶ 43-45.  Further disputed that, "as a result of these efforts," Defendants fulfilled their legal obligations to search for and "locate records responsive to" what they have defined as the "Group 2" portions of Plaintiffs' FOIA Requests. Among other things, Defendants did not produce any records responsive to the following portion of the AP FOIA request: "An accounting of the number of times, between Jan. 1, 2000 and Nov. 6, 2014, that the Federal Bureau of Investigation has impersonated media organizations or generated media-style material (including but not limited to emails, webpages or links) to deliver malicious software to suspects or anyone else caught up in an investigation[.]"  Townsend Decl. ¶ 23.

23.    Disputed in part.  Undisputed that at some point in time "[a]fter this matter reached litigation," the FBI conducted an index search of its Central Records System ("CRS") using the terms "Timberline," "Timberline High School," and "Timberline Highschool" in connection with its processing of what Defendants have defined as the "Group 2" portions of Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶ 34 (defining "Group 2").  Further undisputed that while that search identified responsive records, it "did not yield any records that had not already

been provided" to the FBI "by the Seattle Field office in response to the earlier EC sent to that office." Disputed that this "supplemented" the FBI's "prior efforts." *See* Hardy Decl. ¶ 57. Further disputed to the extent Defendants suggest that this limited search fulfilled their legal obligations to search for and locate records responsive to what they have defined as the "Group 2" portions of Plaintiffs' FOIA Requests. *See* Townsend Decl. ¶¶ 23-24. To the extent that Defendants' SMF ¶ 23 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

24.     Disputed in part. Undisputed that the FBI conducted a search of the agency's Electronic Surveillance ("ELSUR") indices using the terms "Timberline," "Timberline High School," and "Timberline Highschool" in connection with its processing of what Defendants have defined as the "Group 2" portions of Plaintiffs' FOIA Requests. *See* Hardy Decl. ¶ 34 (defining "Group 2"). Further undisputed that "no records were identified as a result of that search." Disputed to the extent Defendants suggest that this limited search fulfilled their legal obligations to search for and locate records responsive to what Defendants have defined as the "Group 2" portions of Plaintiffs' FOIA Requests. *See* Townsend Decl. ¶¶ 23-24. To the extent that Defendants' SMF ¶ 24 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

25.     Disputed. Records provided to Plaintiffs in response to their FOIA Requests, as well as publicly available information, including public statements from FBI officials, provide clear affirmative indications that additional materials responsive to Plaintiffs' FOIA Requests are likely to exist, and indicate where such records are likely to be found. For example, among other things, RCFP-34 suggests that the FBI took an approach similar to what occurred in the Seattle/Timberline Incident in connection with an investigation in St. Louis, which suggests the

St. Louis Field Office should have been searched for responsive records, Townsend Decl. ¶ 27 & Ex. R, and FBI Director Comey wrote a letter to the editor of *The New York Times* regarding the Seattle/Timberline Incident, which suggests the Office of the Director should have been searched for responsive records, Townsend Decl. ¶ 9 & Ex. H.

To the extent Defendants' SMF ¶ 25 stands only for the narrow proposition that the "results" of the FBI's search of its CRS and ELSUR, alone, did not "suggest" to Defendants that other records responsive to Plaintiffs' FOIA Requests "would likely exist," it is undisputed, but so limited as to be immaterial.  The FBI conducted only a narrow search of its CRS index and of its ELSUR using the terms "Timberline," "Timberline High School," and "Timberline Highschool"—terms that would only identify records relating to the Seattle/Timberline Incident—and it did so solely in connection with its processing of what it has defined as the "Group 2" portions of Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶ 34 (defining "Group 2"); *See* SMF ¶¶ 23–24.  To the extent that Defendants' SMF ¶ 25 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

26.    Undisputed.

27.    Disputed in part.  Undisputed that Defendants have asserted FOIA Exemption 1 as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests.  Disputed that the Hardy Declaration "justifies and describes the basis for the withholding of these materials."  *See* Hardy Decl. ¶¶ 63–72.  Further disputed that the Hardy Declaration sets forth "the applicable Executive Order" or "the basis for the classification."  *See id.*  To the extent that Defendants' SMF ¶ 27 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

28.    Disputed in part.  Undisputed that Defendants have asserted Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), under FOIA Exemption 3 as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests.  Disputed that such information is being properly withheld "pursuant" to the cited statutes, or that that the Hardy Declaration "justifies" these withholdings—which is unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶¶ 74–76.  To the extent that Defendants' SMF ¶ 28 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

29.    Disputed in part.  Undisputed that Defendants have asserted the Pen Register Act, 18 U.S.C. § 3123(d) under FOIA Exemption 3 as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests.  Disputed that "the withheld material contains information that, if disclosed, would reveal either the existence or use of a pen register or trap and trace device, or reveal the existence of an investigation involving a pen register or trap and trace device."  Among other things, Defendants never applied for or received an order granting the placement of a pen register or trap and trace device in connection with the 2007 Seattle/Timberline Incident that the withheld material relates to.  *See* Townsend Decl. ¶¶ 12–14 and Exs. K, L, M.  Further disputed that the Hardy Declaration "justifies" these withholdings.  *See* Hardy Decl. ¶ 77.  To the extent that Defendants' SMF ¶ 29 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

30.    Disputed in part.  Undisputed that Defendants have asserted the deliberative process privilege under FOIA Exemption 5 as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests.  Disputed that the withheld materials "are predecisional and deliberative" and have been properly withheld "pursuant" to the deliberative process

privilege—which is unsupported by the cited portions of the Hardy Declaration. *See* Hardy Decl. ¶¶ 79–82. Further disputed that the Hardy Declaration "justifies and sets forth the basis for" these withholdings. *See id.* To the extent that Defendants' SMF ¶ 30 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

31. Disputed in part. Undisputed that Defendants have asserted the attorney-client privilege under FOIA Exemption 5 as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests. Disputed that the withheld "material involves confidential communications between and among FBI counsel and their FBI client employees, consisting of legal advice provided with respect to an ongoing investigation and related prosecution" that has been properly withheld "pursuant" to the attorney-client privilege—which is unsupported by the cited portions of the Hardy Declaration. *See* Hardy Decl. ¶¶ 83–84. Further disputed that the Hardy Declaration "justifies" these withholdings. *See id.* To the extent that Defendants' SMF ¶ 31 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

32. Disputed in part. Undisputed that Defendants have asserted FOIA Exemptions 7(C) and 7(E) as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests. Disputed that the Hardy Declaration "justif[ies] these withholdings." *See* Hardy Decl. ¶¶ 87–103. Further disputed that the Hardy Declaration "establishes that the materials withheld under Exemption 7(C) and Exemption 7(E) were compiled for law enforcement purposes," which is unsupported by the cited portions of the Hardy Declaration. *See id.* To the extent that Defendants' SMF ¶ 32 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

33.     Disputed in part.  Undisputed that Defendants have asserted FOIA Exemptions 6 and 7(C) as a basis for redacting "the names and/or identifying information of FBI Special Agents and support personnel."  Disputed that the Hardy Declaration "justifies and sets forth the basis" for these withholdings.  *See* Hardy Decl. ¶¶ 87–88.  Further disputed that the Hardy Declaration "explain[s] why these individuals have substantial privacy interests in not having their identities disclosed," and "why there is no public interest in the disclosure this information because disclosure would not significantly increase the public's understanding of the operations and activities of the FBI."  *See id*.  To the extent that Defendants' SMF ¶ 33 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

34.     Disputed in part.  Undisputed that Defendants have asserted FOIA Exemptions 6 and 7(C) as a basis for redacting "the names and/or identifying information of non-FBI Federal Government personnel."  Disputed that the Hardy Declaration "justifies and sets for the basis for" these withholdings.  *See* Hardy Decl. ¶¶ 89.  Further disputed that the Hardy Declaration "explain[s] why these individuals have substantial privacy interests in not having their identities disclosed," and "why there is no public interest in the disclosure this information because disclosure would not significantly increase the public's understanding of the operations and activities of the federal government."  *See id*.  To the extent that Defendants' SMF ¶ 34 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

35.     Disputed in part, but immaterial.  Undisputed that Defendants have asserted FOIA Exemptions 6 and 7(C) as a basis for redacting "the names and/or identifying information of third parties of investigative interest to the FBI and other law enforcement agencies."  Disputed that the Hardy Declaration "justifies and sets forth the basis for" these withholdings.  *See* Hardy Decl. ¶¶ 90.  Further disputed that the Hardy Declaration "explain[s] why these individuals

maintain substantial privacy interests in not having their identifies disclosed" and "further explain[s] that these privacy interests outweigh any public interest in disclosure because disclosing information about these individuals would not significantly increase the public's understanding of government activities." *See id.* To the extent that Defendants' SMF ¶ 35 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2. Defendants' SMF ¶ 35 is immaterial as Plaintiffs do not intend to challenge Defendants' redaction and withholding of the names, addresses, email addresses, and phone numbers of individuals who are not government employees pursuant to categories (b)(6)-3, (b)(6)-4, (b)(6)-6, (b)(7)(C)-3, (b)(7)(C)-4, and (b)(7)(C)-6.

36.    Disputed in part, but immaterial.  Undisputed that Defendants have asserted FOIA Exemptions 6 and 7(C) as a basis for redacting "the names and/or identifying information of third parties merely mentioned in the responsive documents."  Disputed that the Hardy Declaration "justifies and sets forth the basis for" these withholdings.  *See* Hardy Decl. ¶ 91. Further disputed that the Hardy Declaration "explain[s] why these individuals have substantial privacy interests in non-disclosure" and "further explain[s] that disclosure of this information would not shed any light on the operations and activities of the FBI." *See id.* To the extent that Defendants' SMF ¶ 36 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2. Defendants' SMF ¶ 36 is immaterial as Plaintiffs do not intend to challenge Defendants' redaction and withholding of the names, addresses, email addresses, and phone numbers of individuals who are not government employees pursuant to categories (b)(6)-3, (b)(6)-4, (b)(6)-6, (b)(7)(C)-3, (b)(7)(C)-4, and (b)(7)(C)-6.

37.    Disputed in part.  Undisputed that Defendants have asserted FOIA Exemptions 6 and 7(C) as a basis for redacting "the names and/or identifying information of local law

enforcement personnel."  Disputed that the Hardy Declaration "justifies and sets forth the basis

for" these withholdings.  *See* Hardy Decl. ¶ 92.  Further disputed that the Hardy Declaration

"explain[s] why these individuals have substantial privacy interests in not having their identities

disclosed and why there is no public interest in disclosure of this information."  *See id.*  To the

extent that Defendants' SMF ¶ 37 contains argument and/or conclusions of law, they should be

disregarded by the Court.  *See supra* note 2.

   38. Disputed in part, but immaterial.  Undisputed that Defendants have asserted FOIA

Exemptions 6 and 7(C) as a basis for redacting "the names and/or identifying information of

third party victims of crime."  Disputed that the Hardy Declaration "justifies and sets forth the

basis for" these withholdings.  *See* Hardy Decl. ¶ 93.  Further disputed that the Hardy

Declaration "explain[s] why these individuals have substantial privacy interests in not having

their identities disclosed, and why there is no public interest in the disclosure of this

information."  *See id.*  To the extent that Defendants' SMF ¶ 38 contains argument and/or

conclusions of law, they should be disregarded by the Court.  *See supra* note 2.  Defendants'

SMF ¶ 38 is immaterial as Plaintiffs do not intend to challenge Defendants' redaction and

withholding of the names, addresses, email addresses, and phone numbers of individuals who are

not government employees pursuant to categories (b)(6)-3, (b)(6)-4, (b)(6)-6, (b)(7)(C)-3,

(b)(7)(C)-4, and (b)(7)(C)-6.

   39. Disputed in part.  Undisputed that Defendants have asserted FOIA Exemption

7(E) as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests.

Disputed that these withholdings "protect from disclosure operational directives that inform and

instruct FBI employees on how to properly use certain sensitive, non-public techniques,

procedures, and guidance for conducting investigations (and, in providing this instruction,

identifies the sensitive non-public procedures, techniques, and strategies at issue)," and that such information has been properly withheld "pursuant to Exemption 7(E)"—which is unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶ 96.  Further disputed that the Hardy Declaration "justifies" these withholdings.  *See id*.  Further disputed that the Hardy Declaration "explain[s] why disclosure of these materials could reasonably be expected to risk circumvention of the law."  *See id*.  To the extent that Defendants' SMF ¶ 39 contains argument and/or conclusions of law, they should be disregarded by the Court.

40.     Disputed in part.  Undisputed that Defendants have asserted FOIA Exemption 7(E) as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests. Disputed that these withholdings "protect from disclosure information about an undercover operation conducted by the FBI" and that such information has been properly withheld "pursuant to Exemption 7(E)"—which is unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶ 97.  Further disputed that the Hardy Declaration "justifies" these withholdings. *See id*.  Further disputed that the Hardy Declaration "explain[s] why disclosure of these materials could reasonably be expected to risk circumvention of the law."  *See id*.  To the extent that Defendants' SMF ¶ 40 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

41.     Disputed in part, but immaterial.  Undisputed that Defendants have asserted FOIA Exemption 7(E) as a basis for redacting "internal secure fax numbers and phone numbers." Disputed that the Hardy Declaration "justifies" these withholdings.  *See* Hardy Decl. ¶ 98. Further disputed that the Hardy Declaration "explain[s] why disclosure of these materials could reasonably be expected to risk circumvention of the law, as well as allow individuals to disrupt official FBI business and subject FBI employees to harassing phone calls and facsimiles."  *See*

*id*.  To the extent that Defendants' SMF ¶ 41 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.  Defendants' SMF ¶ 41 is immaterial as Plaintiffs do not intend to challenge Defendants' withholdings under category (b)(7)(E)-4 ("internal FBI secure fax number, email or IP address, Intranet/Web address").

42.     Disputed in part.  Undisputed that Defendants have asserted FOIA Exemption 7(E) as the basis for withholding certain information responsive to Plaintiffs' FOIA Requests.  Disputed that these withholdings "protect from disclosure non-public details concerning [the FBI's] deployment of the Computer and Internet Protocol Address Verifier [(CIPAV)], in addition to other techniques and procedures used by the FBI in criminal and national security investigations," and that such information has been properly withheld "pursuant to Exemption 7(E), which is unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶¶ 99-100.  Further, among other things, there is widespread public knowledge about the Government's deployment of CIPAVs, as well as specific details on their capabilities and operations that are public.  *See Townsend* Decl. ¶¶ 10-11 & Exs. I, J.  Further disputed that the Hardy Declaration "justifies" these withholdings.  *See* Hardy Decl. ¶¶ 99–100.  Further disputed that the Hardy Declaration "explain[s] why disclosure of these materials could reasonably be expected to risk circumvention of the law."  *See id*.  To the extent that Defendants' SMF ¶ 42 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

43.     Undisputed that Defendants have asserted FOIA Exemption 7(E) as a basis for withholding certain information responsive to Plaintiffs' FOIA Requests.  Disputed that these withholdings "protect from disclosure non-public details about targets of FBI pen registers and trap and trace devices," and that such information has been properly withheld "pursuant to

Exemption 7(E)"—which is unsupported by the cited portions of the Hardy Declaration.  *See Hardy* Decl. ¶¶ 77, 101.  Further, among other things, the Government did not apply for a pen register/trap and trace device in connection with the Seattle/Timberline Incident to which the withheld material relates.  *See Townsend* Decl. ¶¶ 12-14 & Exs. K, L, M.  Further disputed that the Hardy Declaration "explain[s] why these materials are exempt from disclosure under Exemption 3" of FOIA.  *See Hardy* Decl. ¶¶ 77, 101.  Further disputed that the Hardy Declaration "justifies withholding of these materials under Exemption 7(E)."  *See id*.  Further disputed that the Hardy Declaration "explain[s] why disclosure of these materials could reasonably be expected to risk circumvention of the law."  *See id*.  To the extent that Defendants' SMF ¶ 43 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

44.     Disputed in part.  Undisputed that Defendants have asserted FOIA Exemption 7(E) as a basis for withholding certain information responsive to Plaintiffs FOIA Requests. Disputed that these withholdings "protect from disclosure the techniques and procedures [the FBI] uses to analyze information in connection with criminal and national security investigations," and that such information has been properly withheld "pursuant to Exemption 7(E)"—which is unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶¶ 102–103.  Further disputed that the Hardy Declaration "justifies these withholdings."  *See id*. Further disputed that the Hardy Declaration "explain[s] why disclosure of these materials could reasonably be expected to risk circumvention of the law."  *See id*.  To the extent that Defendants' SMF ¶ 44 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

45.     Disputed in part.  Undisputed that the FBI examined each of the 267 pages of records it processed in response to Plaintiffs' FOIA Requests.  Disputed that Defendants' have satisfied their obligation to identify and release all reasonably segregable material from those 267 pages, which is unsupported by the cited portions of the Hardy Declaration.  *See* Hardy Decl. ¶ 104.  To the extent that Defendants' SMF ¶ 45 contains argument and/or conclusions of law, they should be disregarded by the Court.  *See supra* note 2.

46.     Disputed.  Defendants' SMF ¶ 46 consists solely of argument and a disputed conclusion of law, which should be disregarded by the Court.  *See supra* note 2.

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

47.     In June of 2007, the FBI applied for and was granted a search warrant authorizing it to deliver a Computer and Internet Protocol Address Verifier (CIPAV) to a juvenile suspected of issuing anonymous bomb threats to his Seattle-area high school. (hereinafter, the "Seattle/Timberline Incident").  Townsend Decl. ¶¶ 12-14 & Exs. K, L, M.

48.      The search warrant in connection with the Seattle/Timberline Incident was executed on June 13, 2007 and returned on June 21, 2007.  Townsend Decl. ¶ 12-14  & Exs. K, L, M.

49.     On June 21, 2007, the United States District Court for the Western District of Washington unsealed the docket, search warrant application, and return related to the Seattle/Timberline Incident.  Townsend Decl. ¶ 14 & Ex. M.

50.     In October 2014, members of the press and public learned for the first time that the FBI had impersonated a member of the news media—specifically, the AP—in 2007 in order to deliver a CIPAV in connection with the Seattle/Timberline Incident.  Townsend Decl. ¶¶ 2-5 & Exs. A, B, C, D; Barrett Decl. ¶ 2 & Ex. A.

51.     On or about October 27, 2014, the *Seattle Times* published the following article about the Seattle/Timberline Incident: Mike Carter*, FBI created fake Seattle Times Web page to nab bomb-threat suspect*, Seattle Times (Oct. 27, 2014), http://www.seattletimes.com/seattle-news/fbi-created-fake-seattle-times-web-page-to-nab-bomb-threat-suspect/, *archived at* https://perma.cc/78WE-DMLS.  Townsend Decl. ¶ 2 & Ex. A.

52.     On or about October 28, 2014, the AP published the following article about the Seattle/Timberline Incident: Gene Johnson, *FBI says it faked AP story to catch bomb suspect*, The Associated Press (Oct. 28, 2014), http://www.ap.org/Content/AP-In-The-News/2014/AP-Seattle-Times-Upset-About-FBI-Impersonation, *archived at* http://perma.cc/ZH7W-XBFS. Barrett Decl. ¶ 2 & Ex. A.  That article quotes FBI special agent Frank Montoya Jr., as stating that FBI impersonation of members of the news media "happens in very rare circumstances[.]" *Id.*

53.     On or about October 28, 2014, *The Washington Post* published the following article about the Seattle/Timberline Incident: Ellen Nakashima and Paul Farhi, *FBI lured suspect with fake Web page, but may have leveraged media credibility*, Wash. Post (Oct. 28, 2014), https://www.washingtonpost.com/world/national-security/fbi-lured-suspect-with-fake-web-page-but-may-have-leveraged-media-credibility/2014/10/28/e6a9ac94-5ed0-11e4-91f7-5d89b5e8c251_story.html, *archived at* https://perma.cc/MF9V-SBZ6.  Townsend Decl. ¶ 3 & Ex. B.

54.     On or about October 30, 2014, *The Stranger* published the following article about the Seattle/Timberline Incident: Ansel Herz, *FBI Spokesperson Suggests Posing As an Associated Press Reporter Is No Different Than Posing As a Dentist*, The Stranger (Oct. 30, 2014, 3:03 PM), http://slog.thestranger.com/slog/archives/2014/10/30/fbi-spokesperson-

suggests-posing-as-an-associated-press-reporter-is-no-different-than-posing-as-a-dentist,

*archived at* https://perma.cc/SD5N-NX8G.  Townsend Decl. ¶ 4 & Ex. C.  That article quotes a

spokesperson for FBI's Seattle Bureau as stating that the FBI, in connection with the

Seattle/Timberline Incident, had "just used something in the style of media," and "could have

pulled it off the *Washington Post* or *New York Times*." *Id*.  The article states that when asked to

provide a general number of how many times the FBI had impersonated journalists, the FBI

spokesperson replied: "That's something you'd have to FOIA[.]" *Id.*

55.     On or about October 30, 2014, AP General Counsel Karen Kaiser delivered a

letter to then-Attorney General Eric Holder regarding the Seattle/Timberline Incident.  Barrett

Decl. ¶ 3 & Ex. B.  The letter stated, in part: "The FBI both misappropriated the trusted name of

The Associated Press and created a situation where our credibility could have been undermined

on a large scale . . . .  It is improper and inconsistent with a free press for government personnel

to masquerade as The Associated Press or any other news organization." *Id.*

56.     A letter dated October 30, 2014 to then-Attorney General Eric Holder from U.S.

Senator Patrick Leahy regarding, *inter alia*, the Seattle/Timberline Incident, states, in part:

"When law enforcement appropriates the identity of legitimate media institutions, it not only

raises questions of copyright and trademark infringement but also potentially undermines the

integrity and credibility of an independent press[.]"  Townsend Decl. ¶ 7 & Ex. F.

57.     On or about October 31, 2014, *The New York Times* published the following

article about the Seattle/Timberline Incident: Editorial, *Deceptions of the F.B.I.*, The New York

Times (Oct. 31, 2014), http://mobile.nytimes.com/2014/11/01/opinion/deceptions-of-the-

fbi.html, *archived at* https://perma.cc/N8GL-MEYD.  Townsend Decl. ¶ 5 & Ex. D.  It states that

the FBI's actions, "if not prohibited by the agency or blocked by courts, risk opening the door to constitutional abuses on a much wider scale." *Id.*

58.     On or about November 6, 2014, the Reporters Committee and a coalition of 25 news organizations sent a letter to then-Attorney General Eric Holder regarding the Seattle/Timberline Incident.  Townsend Decl. ¶ 6 & Ex. E.  That letter states, in part: "The utilization of news media as a cover for delivery of electronic surveillance software is unacceptable.  This practice endangers the media's credibility and creates the appearance that it is not independent of the government . . . ." *Id.*

59.     On November 6, 2014, *The New York Times* published a letter to the editor from FBI Director James Comey regarding the Seattle/Timberline Incident.  Townsend Decl. ¶ 9 & Ex. H.  Regarding the Seattle/Timberline Incident, the letter states, among other things, that an "online undercover officer portrayed himself as an employee of The Associated Press, and asked if the suspect would be willing to review a draft article about the threats and attacks[.]" *Id.*

60.     On or about November 7, 2014, AP Executive Editor Kathleen Carroll was quoted as stating that FBI Director James Comey's November 6, 2014 letter to the editor of *The New York Times* regarding the Seattle/Timberline Incident "doubles our concern and outrage, expressed earlier to Attorney General Eric Holder, about how the agency's unacceptable tactics undermine AP and the vital distinction between the government and the press."  Barrett Decl. ¶ 4 & Ex. C.

61.     In a letter dated November 10, 2014 to then-Attorney General Eric Holder and FBI Director James Comey, AP President and Chief Executive Officer Gary Pruitt sought assurances that the FBI would never again impersonate a member of the news media.  The letter stated, in part: "In stealing our identity, the FBI tarnishes [the AP's] reputation, belittles the

value of the free press rights enshrined in our Constitution and endangers AP journalists and

other newsgatherers around the world.  This deception corrodes the most fundamental tenet of a

free press — our independence from government control and corollary responsibility to hold

government accountable."  Barrett Decl. ¶ 5 & Ex. D.

62.     A letter dated June 12, 2015 from U.S. Senator Chuck Grassley to FBI Director

James Comey regarding, *inter alia*, the Seattle/Timberline Incident, states, in part, that "FBI

agents posed as the Associated Press and created a fake AP news article in a successful phishing

effort to deploy spyware[]" but that the FBI "did not alert the judge of their plan to mimic the

media."  Townsend Decl. ¶ 8 & Ex. G.  The letter asks the FBI for an accounting of how many

times the agency impersonated personnel from legitimate companies, media or otherwise, in

deploying spyware, and which companies it has impersonated.  *Id*.  The letter requests written

responses to questions outlined therein by June 26, 2015.  *Id.*

63.     On April 1, 2016, the government filed a "Response to Court Order" in *United

States v. Levin*, No. 1:15-cr-10271-WGY (D. Mass. Apr. 1, 2016), ECF No. 63, which states,

*inter alia*:

> In its Response to Defendant's Motion to Suppress, however, the government
> referenced several unsealed judicially authorized NIT warrants, *see* Gov.'s Resp.
> to Def.'s Mot. to Suppress, pg. 23 (Doc. # 60), identifying (i) *United States v.
> Cottom, et. al.*, No. 13-cr-108 (D. Neb. Oct. 14, 2014) (Doc #122, Attachment 1;
> Doc. #123, Attachment 1) (2 separate NIT search warrants), (Doc. #155) (denying
> suppression motion); (ii) *In re Search of NIT for Email Address
> texas.slayer@yahoo.com*, No. 12-sw-5685 (D. Col. October 9, 2012) (Doc. #1)
> (search warrants); and (iii) *In re Search of Any Computer Accessing Electronic
> Message(s) Directed to Administrator(s) of MySpace Account
> "Timberlinebombinfo", No. 07-mj-5114* (W.D. Wash. June 12, 2007), available at
> http://www.politechbot.com/docs/fbi.cipav.sanders.affidavit.071607.pdf (search
> warrant).

Townsend Decl. ¶ 15 & Ex. N.

64.     On December 18, 2012, the government applied for a search warrant in

Application for a Search Warrant, *United States v. Network Investigative Technique (NIT)*, No.

1:12-mj-748 (W.D. Tex. Dec. 18, 2012), ECF No. 1, authorizing it to send a "network

investigative technique" to an identified email address.  Townsend Decl. ¶ 16 & Ex. O.  The

application requests permission for the government "to continue to send communications to the

target address for up to 14 days after this warrant is authorized, until the NIT has returned the

information authorized to be collected by this warrant."  *Id.*

65.     On April 9, 2011, the Electronic Frontier Foundation ("EFF") published the

following article on its website eff.org: Jennifer Lynch, *New FBI Documents Provide Details on

Government's Surveillance Spyware*, EFF.org (Apr. 29, 2011), obtained from

https://www.eff.org/deeplinks/2011/04/new-fbi-documents-show-depth-government, *archived at*

https://perma.cc/A48D-NE5G.  Townsend Decl. ¶ 10 & Ex. I.  The article states, *inter alia*, that

CIPAVs allow the FBI to collect the following types of information:

- IP Address
- Media Access Control (MAC) address
- "Browser environment variables"
- Open communication ports
- List of the programs running
- Operating system type, version, and serial number
- Browser type and version
- Language encoding
- The URL that the target computer was previously connected to
- Registered computer name
- Registered company name
- Currently logged in user name
- Other information that would assist with "identifying computer users, computer software installed, [and] computer hardware installed"

*Id.*

66.     On July 18, 2007, *Wired* published the following article: Kevin Poulsen, *FBI Spyware: How Does the CIPAV Work? — UPDATE*, Wired (July 18, 2007), obtained from www.wired.com/2007/07/fbi-spyware-how, *archived at* https://perma.cc/J2P7-TJCW. Townsend Decl. ¶ 11 & Ex. J.   The article quotes the government's application for a search warrant in the Seattle/Timberline Incident to show that the CIPAV "will be deployed through an electronic messaging program from an account controlled by the FBI." *Id.*

67.     In response to Plaintiffs' FOIA Requests, Defendants have not released any records concerning any specific incident of FBI impersonation of a member of the news media other than the Seattle/Timberline Incident.  Townsend Decl. ¶ 23.

68.     In response to Plaintiffs' FOIA Requests, Defendants released only two documents, consisting of 11 pages, relating to the Seattle/Timberline Incident that date from 2014.  Townsend Decl., ¶ 24.

69.     In processing Plaintiffs' FOIA Requests, Defendants divided them into two "groups."  *See* Hardy Decl. ¶ 34.

70.     "Group 1" consists of the FOIA request submitted by the Reporters Committee on October 31, 2014 for "all records concerning the FBI's utilization of links to what are or appear to be news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the 'Computer and Internet Protocol Address Verifier' (CIPAV)."  *See* Hardy Decl. ¶ 34 & Ex. L; Compl. ¶¶ 26–27 & Ex. B, Answer ¶¶ 26–27.

71.     "Group 2" consists of two requests: (1) the FOIA request submitted by the Reporters Committee on October 31, 2014 for "all records concerning the FBI's guidelines and policies concerning undercover operations or activities in which a person may act as a member of the news media, including, but not limited to, the guidelines and policies relating to the

criminal and national security undercover operations review committees and the Sensitive

Operations Review Committee; guidelines and policies concerning the use of investigative

methods targeting or affecting the news media, including, but not limited to, sensitive Title III

applications; and all guidelines and policies concerning sensitive investigative matters involving

the activities of the news media or relating to the status, involvement, or impact of an

investigation upon the news media[]", *see* Hardy Decl. ¶ 34 & Ex. K; Compl. ¶¶ 26, 28, Ex. C;

Answer ¶¶ 26, 28; and (2) the FOIA request submitted by the AP on November 6, 2014, which

requested: "Any documents referring to the decision to create the fake AP news article in the

Timberline High School case.  In particular, I seek correspondence between the FBI's Seattle

office and FBI headquarters about the case.  I also seek a copy of the internal review carried out

by the FBI and a copy of the Web link sent by the FBI to suspect in 2007"; "An accounting of

the number of times, between Jan. 1, 2000 and Nov. 6, 2014, that the [FBI] has impersonated

media organizations or generated media-style material (including but not limited to emails,

webpages or links) to deliver malicious software to suspects or anyone else caught up in an

investigation"; and "[a]ny documents—including training material, reviews and policy

briefings—dealing with the creation and deployment of bogus news stories or media-style

material in an investigative context[]",  Hardy Decl. ¶ 34 & Ex. A., Compl. ¶ 21 & Ex. A,

Answer ¶ 21.

72.     The only component, office, or division of the FBI searched for "Group 1"

records was the FBI's Operational Technology Division ("OTD").  Hardy Decl. ¶¶ 38–39.

73.     Defendants did not search the FBI's Central Records System (CRS) for "Group 1"

records.  *See id.*

74.     The FBI previously asserted that it had searched the CRS for records responsive to Plaintiffs Request No. 1319138, but later stated that it had made a "typographical error". Hardy Decl. ¶¶ 25, 27, 30 & Exs. S, U, X.

75.     Defendants have not provided the search parameters, including the search terms, used by the FBI to search for "Group 1" records.  *See* Hardy Decl. ¶¶ 34–40.

76.     Defendants have not identified the date or dates that it searched for "Group 1" records.  *See id.*

77.     No FBI component, division, or office other than those identified in Defendants' SMF ¶¶ 21, 23-24 was searched for "Group 2" records in response to Plaintiffs' FOIA Requests. *See* Hardy Decl. ¶¶ 41-45, 57-58.

78.     Defendants have not provided the search parameters, including all of the search terms, used by the FBI to search for "Group 2" records.  *See* Hardy Decl. ¶¶ 41–45.

79.     Defendants have not identified which of the components, divisions, or offices identified in Defendants' SMF ¶ 21 located records responsive to Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶¶ 41–45.

80.     Defendants have not indicated whether any of the components, divisions, or offices identified in Defendants' SMF ¶ 21 failed to conduct a search for records responsive to Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶¶ 41–45.

81.     Defendants have not identified the date or dates on which searches for "Group 2" materials were conducted.  *See id.*

82.     Defendants conducted a search of the FBI's CRS index for "Group 2" material using only three keywords that relate to the Seattle/Timberline Incident: "Timberline," "Timberline High School" and "Timberline Highschool[.]"  Hardy Decl. ¶ 57.  Based on the

FBI's search method, the Electronic Surveillance ("ELSUR") was also searched for "Group 2" material using only these three keywords.  *Id.* at ¶ 58.

83.     Defendants have not identified the date or dates that the FBI's CRS index was searched for "Group 2" material using the keywords "Timberline," "Timberline High School" and "Timberline Highschool[,]" but state that the search was conducted "[a]t the litigation stage[.]"  Hardy Decl. ¶ 57.

84.     Aside from the searches described in Plaintiffs' SMF ¶ 82, Defendants have identified no other search that was conducted "[a]t the litigation stage" for records responsive to Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶¶ 1-106.

85.     Defendants have not identified what temporal limits, if any, were applied in searching for records responsive to Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶¶ 1–106.

86.     Defendants did not search the FBI's Office of the Director in processing Plaintiffs' FOIA requests in this case.  *See* Hardy Decl. ¶¶ 1–106.

87.     In response to Plaintiffs' FOIA Requests, Defendants released to Plaintiffs an email related to the Seattle/Timberline Incident that references attached documents that "are ponies of an application for a mobile tracking order, a mobile tracking/PRTT order, and the affidavit supporting the two that ST. Louis [sic] drafted for a similar type order."  Townsend Decl. ¶ 27 & Ex. R.

88.     Defendants did not search the FBI field office in St. Louis for records responsive to Plaintiffs' FOIA Requests.  *See* Hardy Decl. ¶¶ 1–106.

89.     Apart from the FBI's Seattle field office, Defendants did not search any other FBI field office in processing Plaintiffs' FOIA requests in this case.  *See* Hardy Decl. ¶¶ 1–106.

90.     The following records released to Plaintiffs as responsive to their FOIA Requests were classified on November 27, 2015: RCFP-2 & RCFP-3.  Townsend Decl. ¶ 25 & Ex. P.

91.     The following records released to Plaintiffs as responsive to their FOIA Requests were classified on January 12, 2016: RCFP-33, 37, 41, 42, and 43.  Townsend Decl. ¶ 27 & Ex. R.

92.     Defendants have not established that any withheld records responsive to Plaintiffs' FOIA Requests were "forwarded to the Department Security Officer and classified or reclassified only at the direction of the Attorney General, the Deputy Attorney General, or the Assistant Attorney General for Administration."  28 C.F.R. § 17.22(e).  *See* Hardy Decl. ¶¶ 1-106.

93.     The following records released to Plaintiffs as responsive to their FOIA Requests are labeled "SENSITIVE BUT UNCLASSIFIED": RCFP-41 & RCFP-43.  Townsend Decl. ¶ 27 & Ex. R.

94.     Defendants did not provide Plaintiffs with any records responsive to their FOIA requests before this lawsuit was filed.  Townsend Decl. ¶ 21.

Dated: April 25, 2016

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
Bruce D. Brown
DC Bar No. 457317
Adam A. Marshall
DC Bar No. 1029423
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005

Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: bbrown@rcfp.org
Email: amarshall@rcfp.org

*Counsel for Plaintiffs*

*Of Counsel for The Associated Press*:
Karen Kaiser
Brian Barrett
THE ASSOCIATED PRESS
450 West 33rd Street
New York, NY 10001
Telephone: 212.621.7547
Facsimile: 212.506.6131
E-mail: kkaiser@ap.org
E-mail: bbarrett@ap.org

*Of Counsel for The Reporters Committee
for Freedom of the Press*:
Hannah Bloch-Wehba
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: hblochwehba@rcfp.org