UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Case No. 15-1392 (RJL) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) ) ) ) | **FILED** FEB 23 2017 |
| Defendants. | ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

## MEMORANDUM OPINION

(February 22, 2017) [Dkts. #18, #19, #20]

The Reporters Committee for Freedom of the Press ("RCFP") and the Associated Press ("AP") (collectively, "plaintiffs") are suing the Federal Bureau of Investigation ("FBI" or "Bureau"), and the U.S. Department of Justice ("DOJ") (collectively, "defendants"), under the Freedom of Information Act ("FOIA"), to compel the release of records concerning the Bureau's alleged practice of impersonating members of the news media. Before the Court are Defendants' Motion for Summary Judgment [Dkt. #18], Plaintiffs' Motion for Summary Judgment and/or Partial Summary Judgment [Dkt. #19], and Plaintiffs' Motion for *In Camera* Review and/or Other Appropriate Relief [Dkt. #20]. Upon consideration of the pleadings, relevant law, and the entire record herein, the Court will GRANT defendants' motion and DENY plaintiffs' motion. The Court will also DENY plaintiffs' Motion for *In Camera* Review in light of the declarations defendants have proffered in support of summary judgment. *See Isiwele v. HHS*, 85 F. Supp. 3d 337, 344

(D.D.C. 2015); *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003).

## BACKGROUND

Plaintiffs sent three FOIA requests to the FBI for records pertaining to the Bureau's alleged practice of impersonating members of the news media in criminal investigations. These requests were sparked by reports that the FBI had applied for and was granted a search warrant authorizing it to deliver a Computer Internet Protocol Address Verifier ("CIPAV") to a juvenile suspected of issuing anonymous bomb threats to Timberline High School, located near Seattle, Washington, and that the FBI executed this warrant by creating a fake news website to deliver the CIPAV. Pls.' Comb. Statement of Mat. Facts and Resp. to Defs.' Statement of Mat. Facts ¶¶ 47–62 ("Pls.' Facts") [Dkt #19-2]; Defs.' Resp. to Pls.' Statement of Mat. Facts ¶¶ 47–62 [Dkt. #22-1].

### 1. Request No. 1313504-000

On November 6, 2014, Raphael Satter, a news correspondent for the AP, sent a letter to the FBI requesting:

> Any documents referring to the decision to create the fake AP news article in the Timberline High School case. In particular, I seek correspondence between the FBI's Seattle office and FBI headquarters about the case. I also seek a copy of the internal review carried out by the FBI and a copy of the Web link sent by the FBI to suspect in 2007;
> 
> An accounting of the number of times, between Jan. 1, 2000 and Nov. 6, 2014, that the Federal Bureau of Investigation has impersonated media organizations or generated media-style material (including but not limited to emails, webpages or links) to deliver malicious software to suspects or anyone else caught up in an investigation; and
> 
> Any documents—including training material, reviews and policy briefings—dealing with the creation and deployment of bogus news stories or media-style material in an investigative context.

Defs.' Statement of Mat. Facts ¶ 1 ("Defs.' Facts") [Dkt. #18]; Pls.' Facts ¶ 1; Decl. of David M. Hardy ("Hardy Decl.") [Dkt. #18-1], Ex. A (AP letter) [Dkt. #18-2]. The FBI designated the requests contained in this letter as Request Nos. 1313500-000 and 1313504-000 (later consolidating them under No. 1313504-000), granted expedited processing, and waived the applicable fees. Defs.' Facts ¶¶ 2–6; Pls.' Facts ¶ 1; Hardy Decl. ¶¶ 8–10, 15.

### 2. Request Nos. 1319113-000 & 1319138-000

On October 31, 2014, RCFP submitted two letters to the FBI requesting records pursuant to FOIA. The first letter sought:

> [A]ll records concerning the FBI's guidelines and policies concerning undercover operations or activities in which a person may act as a member of the news media, including, but not limited to, the guidelines and policies relating to the criminal and national security undercover operations review committees and the Sensitive Operations Review Committee; guidelines and policies concerning the use of investigative methods targeting or affecting the news media, including, but not limited to, sensitive Title III applications; and all guidelines and policies concerning sensitive investigative matters involving the activities of the news media or relating to the status, involvement, or impact of an investigation upon the news media.

Defs.' Facts ¶ 7; Pls.' Facts ¶ 1; Hardy Decl., Ex. K (first RCFP letter) [Dkt. #18-4].

The second letter sought "all records concerning the FBI's utilization of links to what are, or appear to be, news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the [CIPAV]." Defs.' Facts ¶ 9; Pls.' Facts ¶ 1; Hardy Decl., Ex. L (second RCFP letter) [Dkt. #18-4]. The FBI designated these letters as Request Nos. 1319113-000 and 1319138-000, respectively, and denied expedited processing. Defs.' Facts ¶¶ 12–13; Pls.' Facts ¶¶ 1, 13.

### 3. Litigation and Release of Records

Plaintiffs filed this action in August 2015 asserting the FBI had failed to timely respond to their FOIA requests, failed to conduct a reasonable search, and wrongfully withheld non-exempt records. Compl. ¶¶ 58–74 [Dkt. #1].[1] After the parties filed their meet and confer statement as required by the local rules, the Court entered a Scheduling Order requiring defendants to complete production of all non-exempt records, and setting a briefing schedule for any dispositive motions. Sched. Order (Jan. 19, 2016) [Dkt. #15].

On February 26, 2016, the FBI made an initial release of responsive records, and on March 28, 2016, made a supplemental release. Altogether, the agency processed a total of 267 pages of records responsive to plaintiffs' FOIA requests, releasing 83 pages in full and 103 pages in part. Defs.' Facts ¶ 16; Pls.' Facts ¶ 16. Of the pages withheld in full or withheld in part, 22 pages were withheld in full as duplicates. Defs.' Facts ¶ 16; Pls.' Facts ¶ 16. Of the remaining pages withheld in full or withheld in part, the FBI asserted FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(E). Defs.' Facts ¶ 18; Pls.' Facts ¶ 18. The parties were unable to resolve their differences regarding the sufficiency of the FBI's search and the legal basis for its withholdings, *see* Joint Status Rep. 2 (Mar. 11, 2016) [Dkt. #16], and filed the cross motions for summary judgment now before the Court.

### STANDARD OF REVIEW

FOIA requires federal agencies to release government records to the public upon request, subject to nine exemptions. *See* 5 U.S.C. § 552; *Murphy v. Exec. Office for U.S.*

---

[1] The complaint also challenged the FBI's decision to deny RCFP a fee waiver. Compl. ¶¶ 75–81. Because the FBI has since waived the fee, Defs.' Facts ¶ 17; Pls.' Facts ¶ 17, this issue is moot.

*Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). When presented with a motion for summary judgment in a FOIA case, the district court must review the record de novo to determine whether the agency has shown (1) "the search was reasonably calculated to discover the requested documents," *DiBacco v. U.S. Army*, 795 F.3d 178, 191–92 (D.C. Cir. 2015) (quotation marks omitted); (2) any documents withheld "are exempt from disclosure," *Murphy*, 789 F.3d at 208–09 (quotation marks omitted); and (3) that "all reasonably segregable, nonexempt portions of the requested record(s)" have been disclosed, *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 58 (D.C. Cir. 2003). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this rule," courts are mindful that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Byers v. CIR*, 740 F.3d 668, 675 (D.C. Cir. 2014) (quotation marks omitted). A dispute about a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016) (quotation marks omitted).

## ANALYSIS

### 1. Adequacy of the Search

Plaintiffs contest the adequacy of the search conducted by the FBI. "'When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA

request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents[.]'" *DiBacco*, 795 F.3d at 191–92 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). It is the agency's burden "to show that its search efforts were reasonable and logically organized to uncover relevant documents." *Id.* at 191. An agency may meet this burden "by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Such affidavits are "accorded a presumption of good faith," *SafeCard*, 926 F.2d at 1200, and "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search," *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quotation marks omitted).

In this case, the evidence shows that the FBI conducted a good faith, reasonable search of the systems of records likely to possess records responsive to plaintiffs' requests. The Bureau sorted the requests into two groups. "Group 1" contained FOIA Request No. 1319138-000, pertaining to the FBI's use of HTML links designed to appear as links to news media stories. Hardy Decl. ¶¶ 34–35. "Group 2" contained FOIA Request Nos. 1319113-000 and 1313504-000, pertaining to the Timberline High School case. *Id.* ¶¶ 34, 41. The agency attests that it searched the record repositories appropriate for each group in a manner designed to uncover responsive records. *Id.* ¶¶ 34–59; *see also* Second Decl. of David M. Hardy ¶¶ 2–9 ("Hardy Supp. Decl.") [Dkt. #22-2].[2] "[B]ecause the sworn

---

[2] Plaintiffs assert in their combined opposition and reply that defendants cannot rely on the second declaration of Mr. Hardy because it was not filed with defendants' motion for summary judgment. That

6

declarations from the FBI indicate that it conducted 'reasonably calculated' searches, the burden is on [plaintiffs] to identify specific additional places the agency should now search." *Hodge*, 703 F.3d at 580.

Plaintiffs object to the structure of the FBI's search, arguing that the agency's decision to divide their FOIA requests into two groups "resulted in the FBI conducting unreasonably narrow and misdirected searches for responsive records." Pls.' Mem. of Law in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pls.' Mot. for Summ. J. and/or Partial Summ. J. 14 ("Pls. Mem.") [Dkt. #19-1]. The FBI contends that the division was necessary because, "due to the specificity of the FOIA requests, not all of the requests lent themselves readily or naturally to the searches that the FBI routinely conducts in response to FOIA requests." Hardy Decl. ¶ 34. In particular, the Bureau was concerned that a search of the agency's Central Records System ("CRS") would not produce materials responsive to the Group 1 requests because the "CRS indices are not a repository for policy related matters." *Id.* ¶ 36. The agency determined that its Operational Technology Division ("OTD") was likely to possess the responsive documents, and directed that unit to search its records. *Id.* ¶¶ 37–40 & n.6; *see also* Hardy Supp. Decl. ¶ 4 (explaining "OTD is solely responsible for the deployment and collection of all lawfully conducted electronic surveillance bureau wide"). Although plaintiffs would have structured the search differently, an agency "need

---

assertion is contrary to the practice of courts in this Circuit. *See, e.g., Barnard v. DHS*, 598 F. Supp. 2d 1, 20 (D.D.C. 2009) ("Based on the present record, which includes the second declaration . . . the Court finds that Defendant has met its burden[.]"); *Schoenman v. FBI*, 575 F. Supp. 2d 166, 176–77 (D.D.C. 2008) (similar). The second Hardy declaration is now part of the record, and plaintiffs have responded to its content. The Court will consider the declaration and plaintiffs' arguments as appropriate.

7

not knock down every search design advanced by every requester" in order to prevail at summary judgment. *DiBacco*, 795 F.3d at 191.

On a related note, plaintiffs fault the FBI for its decision not to search the CRS for documents responsive to the Group 1 requests. But "[t]he FBI was not required to search every record system; it was only required to conduct a reasonable search of those systems of records *likely* to possess the requested information." *Light v. DOJ*, 968 F. Supp. 2d 11, 25 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The FBI's search of the OTD records satisfied this standard because, as explained above, that division was likely to possess the requested information. In any event, the agency avers that despite its initial determination, it has now conducted a search of the CRS. That search produced no responsive records. Hardy Supp. Decl. ¶ 5.

Plaintiffs also criticize the search terms used by the FBI for locating records responsive to the Group 2 requests in the CRS and the Electronic Surveillance ("ELSUR") indices. According to plaintiffs, the keywords used were "deficient" because they "relat[ed] solely to the Seattle/Timberline Incident." Pls.' Mem. 15–16. But the FBI explains that these terms were necessary because CRS and ELSUR are indexed based on specific individuals, events, and organizations, Hardy Decl. ¶¶ 49, 55, 59, and the Timberline incident was the only specific incident referenced in plaintiffs' requests, *see id.*, Exs. A (AP letter), K (first RCFP letter), and L (second RCFP letter). As our Circuit has made clear, a search is not rendered inadequate by the suggestion of "additional search terms" that, in the requester's view, the agency "should have used." *DiBacco*, 795 F.3d at 191.

8

Plaintiffs further contend that the search was inadequate because the FBI did not, in its response to plaintiffs, specify the cut off dates it used. According to plaintiffs, this omission "strongly suggests" that the FBI followed the unreasonable practice of imposing "date-of-request" cut offs. Pls.' Mem. 16. Whatever the merits of this inference, the Bureau has since clarified that for all searches, it used a "date-of-search" cut off. Hardy Supp. Decl. ¶¶ 4–6 & n.4. These cut offs were reasonable. *See, e.g., Pub. Citizen v. Dep't of State*, 276 F.3d 634, 644 (D.C. Cir. 2002); *Schoenman v. FBI*, No. CIV.A. 04-2202CKK, 2009 WL 763065, at *18 (D.D.C. Mar. 19, 2009).

Finally, plaintiffs advance a number of arguments speculating that additional responsive documents must exist in light of other publically available records, such as newspaper articles, court filings, and previously released FBI documents. Plaintiffs face an uphill climb in this regard. "In general, the adequacy of a search is determined not by the fruits of the search, but by the appropriateness of its methods." *Hodge*, 703 F.3d at 579 (quotation marks and alteration omitted). Nevertheless, I have reviewed the information identified by plaintiffs for "positive indications of overlooked materials." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (quotation marks omitted). Nothing in these materials persuades me that plaintiffs' arguments are anything more than "[m]ere speculation that as yet uncovered documents may exist." *Hodge*, 703 F.3d at 580 (quoting *Safecard*, 926 F.2d at 1201). Accordingly, I conclude the FBI has carried its burden to show that its search was adequate.

## 2. Applicability of FOIA Exemptions

Plaintiffs also contest the applicability of FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(E), asserted by the FBI as a basis for withholding certain records. "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). This task "is not herculean." *Murphy*, 789 F.3d at 209. An agency can meet its burden "by submitting affidavits that describe the justifications for nondisclosure with reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption." *Id.* (brackets and quotation marks omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *ACLU*, 628 F.3d at 619 (quotation marks omitted).

### a. Exemption 1

The FBI withheld portions of seven pages under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), which exempts from disclosure properly classified national defense or foreign policy materials. In determining whether the government's invocation of Exemption 1 is justified, our Circuit has "consistently deferred to executive affidavits predicting harm to the national security." *Larson v. U.S. Dep't. of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (quoting *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003)). Here, the FBI provides a sworn affidavit from an original classification authority, David M. Hardy, Section Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI, who reviewed all of the withheld information and affirms that it is properly classified pursuant to Executive Order 13526. Hardy Decl. ¶¶ 2, 67–68.

He also affirms that the withheld material contains information pertaining to intelligence sources and methods, and that release of this information reasonably could be expected to cause serious damage to the national security of the United States, and therefore should be and is classified at the "Secret" level. *Id.* ¶¶ 70, 72; *see also* Hardy Supp. Decl. ¶ 11. Accordingly, I will defer to the FBI's predictive judgment regarding this classified material and will not review it *in camera* or order it disclosed.

### b. Exemption 3

The FBI also withheld material on seven pages under FOIA Exemption 3. As relevant here, the Exemption provides that FOIA's disclosure obligation "does not apply to matters that are . . . specifically exempted from disclosure by [another] statute." 5 U.S.C. § 552(b)(3)(A). To apply the Exemption, the Court must ask: "Does the statute meet Exemption 3's requirements? And does the information that was withheld fall within that statute's coverage?" *Labow v. DOJ*, 831 F.3d 523, 527 (D.C. Cir. 2016).

Plaintiffs contend that the Bureau has not shown that the information withheld falls within the coverage of the National Security Act of 1947. The Act, which undoubtedly meets the requirements of Exemption 3, *CIA v. Sims*, 471 U.S. 159, 167–68 (1985), grants the government "broad authority to protect all sources of intelligence information from disclosure," *id.* at 169. Mr. Hardy's affidavit explains that "the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiffs." Hardy Decl. ¶ 76. After reviewing the parties' arguments on this matter, and

11

deferring to the sworn affidavit as explained above, I am satisfied that the Bureau properly withheld portions of the responsive records under the National Security Act of 1947.[3]

### c. Exemption 5

The FBI also withheld material under FOIA Exemption 5, 5 U.S.C. § 552(b)(5). "Exemption 5 incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant" including "the deliberative process privilege" and "the government attorney-client privilege." *Baker & Hostetler*, 473 F.3d at 321. The Bureau asserts these privileges with regard to redacted portions of six pages of emails between FBI attorneys and other personnel discussing "matters pertaining to the application of an investigative technique," Hardy Decl. ¶ 82 & n.28, and of "a report containing information discussing legal issues regarding the Timberline School Investigation," *id.* ¶ 84 & n.29. Plaintiffs contest the applicability of both privileges. According to plaintiffs, unredacted portions of these documents show that the information withheld is not "pre-decisional" and thus that the deliberative process privilege cannot apply. Likewise, they argue, the documents bear no indicia of confidentiality and thus the government attorney-client privilege cannot apply.

I conclude that both exemptions apply. The unredacted portions of the email messages, submitted by plaintiffs, show that agency personnel were discussing changes to, and legal review of, an application for a search warrant before submitting it to a court. *See* Decl. of Katie Townsend, Ex. Q [Dkt. #19-25]. Such information is both pre-decisional

---

[3] In light of this holding, and my holding concerning Exemption 7(E), *infra*, I find it unnecessary to address the parties' arguments concerning the applicability of Exemption 3 to information obtained pursuant to the federal statute addressing pen registers and trap and trace devices, 18 U.S.C. §§ 3123–27.

and privileged. *See, e.g., Soghoian v. DOJ*, 885 F. Supp. 2d 62, 73–74 (D.D.C. 2012) (holding FBI properly withheld "emails among attorneys discussing particular search warrants and investigations" and "draft language regarding guidance" on same). And in regard to the report on the Timberline investigation, the supplemental declaration provided by the FBI clarifies that the redacted material "concerns opinions and recommendation[s] of an advisory nature about FBI authority and policy evaluated in light of the Timberline investigation, but not adopted by the agency as final policy." Hardy Supp. Decl. ¶ 18. Thus, this information, too, was properly withheld. *See, e.g., Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 8–9 (D.C. Cir. 2014) (affirming withholding of advisory material).

### d. Exemption 6 and 7(C)

The FBI also withheld names and identifying information of federal and state law enforcement and support personnel under FOIA Exemptions 6 and 7(C). "FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 protects "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Both Exemptions require the Court to balance "the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Light*, 968 F. Supp. 2d at 28 (quotation marks omitted).

The FBI starts from a strong position. Courts in our Circuit have repeatedly held that law enforcement and support personnel have an "extremely strong privacy interest" in not having their identifying information disclosed in connection with any particular investigative matter. *Brown v. FBI*, 873 F. Supp. 2d 388, 404 (D.D.C. 2012); *see also Hodge*, 703 F.3d at 580; *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980) ("[T]hese agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives."). The FBI has invoked that weighty interest here, Hardy Decl. ¶¶ 87–89, 92, and plaintiffs offer little to counterbalance it. To be sure, plaintiffs assert that production of the records they seek "will inform the public as to whether the FBI followed its own internal guidelines in the Seattle case and in other cases." Pls.' Mem. 39. But they do not explain what, if anything, the disclosure of information identifying individual government employees would add to informing the public. "In the absence of a legitimate public interest, the private interest in avoiding harassment or violence tilts the scales." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006). The Bureau properly withheld this information.

#### d. Exemption 7(E)

FOIA Exemption 7(E) protects "records or information compiled for law enforcement purposes" when production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly

specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [FBI] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). Under this standard, an agency "is not required to describe secret law enforcement techniques, even generally, if the description would reveal the very information sought to be withheld." *Light*, 968 F. Supp. 2d at 29.

Here, the FBI invokes Exemption 7(E) with respect to six kinds of information: (1) operational directives; (2) records pertaining to a specific undercover operation; (3) internal FBI secure fax and phone numbers; (4) details concerning deployments of CIPAVs; (5) details about certain targets of pen registers and trap and trace devices; and (6) collection and analysis methods. In regard to each category, the FBI has credibly and thoroughly explained how release of the information in question might create a risk of circumvention of the law. Hardy Decl. ¶¶ 94–103; Hardy Supp. Decl. ¶¶ 22–27. Although plaintiffs demand that the Bureau describe in greater detail the nature of the records it withheld, I find that the agency has justified its withholdings because it has "logically explain[ed]" how the information could help criminals circumvent the law. *Blackwell*, 646 F.3d at 42.

### 3. Segregation of Records

Finally, plaintiffs contest the FBI's segregation of responsive records. Under FOIA, "even if an agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Assassination Archives*, 334 F.3d at 58. "Agencies are entitled to a presumption that they complied with the obligation

15

to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Plaintiffs argue that the FBI has inadequately explained why it could not reasonably segregate and disclose additional material. As noted above, excluding duplicates, the Bureau withheld 59 pages in full and 103 pages in part. The agency affirms that it "individually examined" every page "line by line." Hardy Decl. ¶ 104. Material that was withheld was either exempt from disclosure or was so intertwined with protected material that segregation was not possible without foreseeable harm. *See id.* ¶ 105; Hardy Supp. Decl, Ex. A (*Vaughn* index) [Dkt. #22-3]. Upon review of the FBI's declarations and *Vaughn* index, I conclude that the Bureau has fulfilled its duty to be "as specific as possible without actually disclosing information that deserves protection." *Assassination Archives*, 334 F.3d at 58 n.3 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Court will GRANT Defendants' Motion for Summary Judgment, will DENY Plaintiffs' Motion for Summary Judgment and/or Partial Summary Judgment, and will DENY Plaintiffs' Motion for *In Camera* Review and/or Other Appropriate Relief. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge